**LEWIS AND EUGENIA VAN WEZEL FOUNDATION, INC., et al.,**
Appellants,

v.

**GUERDON INDUSTRIES, INC.,**
Appellee.

**No. 154, Docket 71–1726.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1971.
Decided Nov. 12, 1971.

Gerald Walpin, New York City (Melvin H. Orlans, Rosenman Colin Kaye Petschek Freund & Emil, New York City, on the brief), for appellants.

Edward N. Costikyan, New York City (Neil H. Cogan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for appellee.

Before MEDINA, MANSFIELD and MULLIGAN, Circuit Judges.

MEDINA, Circuit Judge:

This appeal presents a question concerning the scope of CPLR 302(a) (1), the New York long-arm statute. The precise issue before us is whether or not appellants' causes of action, based upon promissory notes admittedly issued by appellee, arise from the transaction of business in New York, within the meaning of CPLR 302(a) (1). For the reasons that follow, we hold that they do. The opinion below is not reported.

In 1959, several partners, employees and clients of Ladenburg, Thalmann & Co., an investment house, joined together to form Trailer Homes, Inc., a Delaware corporation, for the purpose of acquiring several Michigan companies, including Guerdon Industries. Trailer operated from Ladenburg's New York office, employed Ladenburg's New York attorneys, and opened a New York bank account at the Irving Trust Co.

The necessary capital with which to purchase the Michigan companies was raised by issuing six percent notes, on July 31, 1959 to:

Ladenburg, Thalmann & Co. for $1,250,000;

Red Canyon Corp., a Ladenburg client, for $1,000,000;

Lionel Pincus, a Ladenburg employee, for $150,000; and

Lewis Van Wezel, a Ladenburg client, for $100,000.

These notes were signed in New York, were made payable in New York, and the interest on them was paid by checks drawn, in Michigan, on the Irving Trust account.

The Michigan companies were purchased on August 4, 1959, whereupon the name of Trailer Homes was changed to Guerdon Industries, Inc. The president of Guerdon maintained his office in Michigan, while Guerdon's secretary maintained his office in New York until 1966. Meetings of the Board of Directors have been held in New York on occasion.

On May 12, 1960, Guerdon borrowed $6,000,000 from Prudential Insurance Company of America in exchange for promissory notes. The next day, on May 13, 1960, the holders of the Guerdon six percent notes entered into an agreement with Prudential by which they subordinated their debt to that of Prudential. The note holders, moreover, agreed not to sue to recover on their notes unless Prudential joined in the action. On October 29, 1970, Prudential waived this right and consented to the commencement of these actions against Guerdon.

All of the notes currently being sued upon are at least one step removed from the original notes issued in 1959. There are three groups of notes involved in the present actions.

(1) *The Ladenburg, Saunders and St. Phalle Notes:*

On November 23, 1965, Ladenburg, Thalmann & Co. requested that its note be broken into two notes because of the retirement of Leo Shaw, a Ladenburg partner. Consequently, Ladenburg's note was cancelled and two new ones were issued to replace it. One replacement note was issued to Shaw for

$165,000, representing his pro rata share of Ladenburg's original note. The second replacement note was issued for the balance of the face amount of the original Ladenburg note, and was issued in Ladenburg's name. Each replacement note bore the date of the original note that it replaced.

On March 10, 1968, Ladenburg requested that the replacement note in its name be broken into seven notes. Six represented the pro rata shares of six retired or deceased partners, and the replacement notes were issued in their names. The seventh replacement note represented the remainder, and was issued in Ladenburg's name. The replacement notes were issued and signed in Vicksburg, Mississippi in response to a mail request from New York, and each bore the date of the original note that it replaced.

The notes upon which Ladenburg, Saunders and St. Phalle sue are three of these seven replacement notes. The terms of the replacement notes are identical to those of the original Ladenburg note. The aggregate value of the eight replacement notes equals the value of the original Ladenburg note. Thus, in every sense, the replacement notes represent the same obligation as the original note.

*(2) The Merfris, S.A. Note:*

On December 29, 1959, Red Canyon Corporation's note was broken up, at its request, to reflect Red Canyon's sale of $500,000 of that note to Fides Union Fiduciare for the account of Merfris, S.A. The court below held that there was not sufficient evidence to support a finding that the replacement note was signed in New York. This successor note is also identical in terms to the original and it represents a part of the same obligation. The proofs might support a finding that this replacement note was signed in New York, but, as we hold the court had personal jurisdiction of Guerdon, we do not reach nor have we considered this phase of the case.

*(3) The Van Wezel Foundation Note:*

The note issued to Lewis Van Wezel was exchanged, on February 19, 1964, for one issued to the trustees of a trust established by Van Wezel. The terms and the face value of the two are identical. The replacement note represents the same debt as was represented in the original note. As in the Merfris, S.A. note, the District Court held that the evidence presented by appellants was insufficient to support a finding that the replacement note was signed in New York. Again, we do not reach and have not considered the question of whether or not the evidence was or was not sufficient.

These actions on the notes were originally brought in the New York State Supreme Court for summary judgment in lieu of complaint under CPLR 3213. The actions were removed to the Southern District of New York on diversity grounds. Jurisdiction over Guerdon was predicated on CPLR 302(a) (1), which provides for personal jurisdiction over a non-resident defendant if the cause of action arises out of the transaction of business within New York State.

In an opinion and order dated April 21, 1971, the District Court ordered discovery on two issues: (1) whether or not Guerdon was intended to be a donee beneficiary of the agreement between the note holders and Prudential; and (2) whether or not there was jurisdiction over Guerdon under CPLR 302(a) (1). In an opinion and order dated July 8, 1971, the District Court did not reach the first issue because it held that there was no jurisdiction over Guerdon. The court below reasoned that the causes of action were based on the successor notes, which it found were not made in New York. Consequently, it was held that the present causes of action did not arise out of the transaction of business in New York, and therefore do not come within the purview of CPLR 302(a) (1). We disagree with this holding.

CPLR 302(a) (1) provides:

(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

1. transacts any business within the state; * * *.

It is conceded that if the actions were on the original notes, there would be jurisdiction under CPLR 302(a) (1). The appellee contends, and the court below held, however, that the transaction of business in this case was the signing of the notes. Since the present actions are on the replacement notes, the argument goes, they must be looked to to determine jurisdiction, and consequently, if they were signed outside of New York, there is no jurisdiction. We cannot go along with such a wooden approach. Even assuming *arguendo* that the replacement notes were all signed outside of New York, that fact does not defeat jurisdiction in these consolidated cases. The transaction of business in this case was the borrowing of money. This clearly took place in New York, and the fact that the original loans are now embodied in new pieces of paper, signed outside of the State, does not deprive the New York courts of jurisdiction. We think the relevant cases support this view.

In Northland Paper Co. v. Mohawk Tablet Co., 271 F.Supp. 763 (S.D.N.Y. 1967) a purchase order was signed in New York after negotiations in New York. Subsequently, a modified agreement was made in Chicago. In an action on the modified agreement, New York was held to have had jurisdiction. Similarly, in Pacer International Corp. v. Otter Distributing Co., 51 Misc.2d 737, 273 N.Y.S.2d 829 (Sup.Ct.N.Y.Co. 1966) a guarantee was executed in New York. Subsequently, a document continuing the guarantee was executed in Pennsylvania. In an action in New York on the guarantee, the court held that New York had jurisdiction. Finally, in Jay's Stores, Inc. v. Ann Lewis Shops, Inc., 15 N.Y.2d 141, 256 N.Y.S.2d 600, 204 N.E.2d 638 (1965) the New York Court of Appeals gives a strong indication that it would sustain jurisdiction in this case. The defendant in *Jay's Stores* had once been authorized to do business in New York, but had filed a certificate of surrender of authority to do business. The certificate of surrender contained a consent to jurisdiction on any liability or obligation incurred within the State. Plaintiff sued defendant, after defendant had filed the certificate of surrender, in Massachusetts on the basis of a guarantee executed in New York. Plaintiff obtained a judgment in that action and sued on the judgment in New York. The Court of Appeals held that there was jurisdiction because the underlying obligation, the guarantee, was incurred in New York. The Massachusetts judgment, said the court, was " 'merely the old debt in a new form' * * *." 15 N.Y.2d at 147, 256 N.Y.S.2d at 604, 204 N.E.2d at 641.

Thus, we think the New York Court of Appeals has rejected the mechanical approach urged upon us in this case. To hold that there is no jurisdiction over Guerdon would exalt form over substance and defeat the purpose of CPLR 302(a) (1). For the foregoing reasons, we reverse.

The court below did not reach the question of whether or not Guerdon was intended to be a donee beneficiary of the agreement between the note holders and Prudential. While this argument has all the earmarks of a dilatory maneuver, we remand for a determination of this issue because the District Judge, in his memorandum ordering discovery on this issue, thought a resolution of this issue might be dispositive of the merits.