**MATTGO ENTERPRISES, INC.,**
**Plaintiff,**

v.

**Henry AARON et al., Defendants.**

**No. 73 Civ. 4974.**

United States District Court,
S. D. New York.

April 15, 1974.

Madden, Plunkett, Wetzel & Scott, New York City, for plaintiff; William A. Wetzel, New York City, of counsel.

Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for defendant Aaron; Raymond F. Gregory and David Fleischer, New York City, of counsel.

Hardee, Barovick, Konecky & Braun, New York City, for defendants William Morris Agency, Inc. and W. M. A. Sports, Inc.

GURFEIN, District Judge:

On February 1, 1973 when defendant Henry Aaron was on the way to breaking Babe Ruth's home run record, he signed a paper by which he appointed Mattgo Enterprises, Inc. ("Mattgo") to be "my true and lawful attorney-in-fact and to represent me as my exclusive personal manager, attending to all my business arrangements, except for personal investment counselling, accounting and banking services and preparation of tax returns, for a period of two years. . . ." Mattgo was given authority to sign contracts "in my name on my behalf." Aaron agreed to pay Mattgo "fifteen per cent of all the gross monies and other considerations I receive directly or indirectly, except the monies I receive for compensation as a member of a professional baseball team." Mattgo was "authorized to receive all gross monies and other compensation resulting from agreements on my behalf and to deposit same, after deducting its fees therefrom; thereafter remitting the balance to me."

It was also provided that Mattgo "shall not be obligated to render exclusive services to me." It provided that "[t]his Power shall supersede any existing agreements that I have with [Mattgo]." The paper was not signed by Mattgo.

The only motion before me is to dismiss the complaint against Aaron on the ground that the Court has no jurisdiction over his person. We may assume that the complaint is good since it has not been challenged. I shall, therefore, refer to the paper signed only by Aaron as "the agreement."

The agreement was executed in Atlanta, Georgia. Though there are other factual disputes with respect to the place and extent of the negotiations for this 1973 agreement, there is no doubt that there was an earlier agreement, of a non-exclusive nature, between Aaron and Mattgo.

Paul Goetz, president of Mattgo, testifies by affidavit as follows: As early as May and June of 1970 there were discussions with Mr. Aaron at the Roosevelt Hotel in New York City, and there Goetz and Aaron negotiated the terms of a non-exclusive contract whereby the plaintiff would represent Mr. Aaron. A signed contract was later signed by Mr. Aaron in Atlanta and returned to the plaintiff in New York where it maintained its offices at 435 West 57th Street. From June, 1970 until the date of breach of the contract alleged in the complaint, plaintiff provided personal representation for Mr. Aaron from its offices in New York.

Goetz avers and Aaron denies, however, that Aaron personally used the Mattgo offices in New York and that it was Aaron who had printed and used personal stationery showing the Mattgo office address. Nor does Mr. Aaron agree that he ever directed officials of the Atlanta Braves to refer inquiries to the plaintiff. What Mr. Aaron does not deny is that the plaintiff provided him with personal representation from its offices in New York, and that in June 1970 Mr. Aaron came to New York City to make a television commercial for Gillette Razor Blades, arranged by the plaintiff. Nor is it denied that in December, 1971, Mr. Aaron was in New York City to perform a contract with the Celanese Corporation which had also been arranged by the plaintiff in New York.

Other meetings with Mr. Aaron in New York City are recited, but since they are inferentially controverted I shall disregard them.

In 1973, Mr. Aaron met in New York City with plaintiff's officers and others to discuss business. He met with Mr. David Wolf, an author. It appears to be uncontradicted that in New York City Mr. Goetz and Mr. Aaron met with officers of Adirondack, a Division of A–T–O, Inc., and executed a contract annexed to the Goetz affidavit (Ex. C). The contract recites that it was "made in New Jersey," but it does provide that notices to be sent to Aaron would be addressed to Mattgo at 185 East 85th

Street. The contract is witnessed by Mr. Goetz.

Mr. Aaron avers that he did not ever come to New York in 1973 except as a baseball player with the Atlanta Braves. He does not deny that he had meetings in New York with the principals of the plaintiff but says that these were incidental to his coming to New York to play baseball.

Essentially it is the defendant's contention that his contacts with the State of New York from June 5, 1970 until January 31, 1973 are separate and apart from the controversy in suit and are, hence, irrelevant. Treating as a discrete time period the interim from February 1, 1973 until September 13, 1973, he argues that the agreement was not signed in New York and was not to be performed here. He notes it was not even negotiated here. He further contends that Mattgo is not an agent but an independent contractor, and that, in any event, an agent cannot "bootstrap" himself in a suit against his own principal for the purpose of establishing long-arm jurisdiction.

The jurisdiction of this Court is based upon diversity of citizenship. The action was originally brought in the state court, and removed by the defendant Aaron to this Court. Aaron was served in Atlanta, Georgia. After removal, he made this motion to dismiss.[1]

■ This Court must follow state law with respect to the reach of the New York long arm statute. Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 319 (2 Cir. 1964); .Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2 Cir. 1965). In view of the divergent views of the judges of the New York Court of Appeals, see McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604

(1961) (4 to 3), it is not easy to prophesy what that Court would say in given circumstances. But a federal court must try.

It is sufficient for constitutional due process that the suit is based on a contract which had substantial connection with the state. McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The constitutionality of the service of process depends then upon what is the "substantial connection" which the contract has with the state.

CPLR § 302(a) reads as follows: *"Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

1) transacts any business within the state . . . "

In International Shoe Co. v. State of Washington, 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945), the Supreme Court noted that some "single or occasional acts . . . because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render [a party] liable to suit."

In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Court said:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

---

1. Although the plaintiff and the defendant William Morris Agency, Inc. are both New York corporations with their principal places of business in New York, and this might appear to destroy diversity jurisdiction, it is the better view that since the claim for *breach of contract* against Aaron, a Georgia citizen, is different from the claim of *inducing breach of contract,* Aaron may properly remove the action under 28 U.S.C. 1441(c). See discussion by Judge Weinfeld in Twentieth Century-Fox Film Corporation v. Taylor, 239 F.Supp. 913, 914–918 (S.D.N.Y. 1965).

State, thus invoking the benefits and protections of its laws."

■ CPLR § 302 provides that the cause of action must be one arising out of the act. McLaughlin, Practice Commentary to § 302 (McKinney's C 302:2 at pp. 63–65). But a single transaction in New York, out of which the cause of action has arisen, may satisfy the requirement of the transaction of business provision. Longines-Wittnauer v. Barnes & Reinecke, 15 N.Y.2d 443, 456, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

■■ Since the cause of action must arise out of the act, that act must be related to the contract in suit, and not to earlier contracts. See Fontanetta v. American Board of Internal Medicine, 421 F.2d 355, 357–358 (2 Cir. 1970); see also Gelfand v. Tanner Motor Tours, Ltd., supra, 339 F.2d at 323. Accordingly, although there is strong reason to believe that Mr. Aaron had sufficient contacts with New York to have supported jurisdiction under the previous contract with Mattgo, that activity is not relevant to a claim founded upon "a cause of action arising from" a subsequent contract.

We turn then to Aaron's contacts in New York in relation to the contract in suit, specifically his 1973 contacts. As Judge Fuld noted in Longines-Wittnauer, supra, the New York statute does not "fix precise guidelines, as other states [do]. . . ." 15 N.Y.2d at 456, 261 N.Y.S.2d at 18, 209 N.E.2d at 75. "Therefore, even though the last act marking the formal execution of the contract may not have occurred within New York, the statutory test may be satisfied by a showing of other purposeful acts performed by the appellant in this State in relation to the contract, albeit preliminary or subsequent to its execution." 15 N.Y.2d at 457, 261 N.Y.S.2d at 18, 209 N.E.2d at 75.

■ The contract was executed in Atlanta. That circumstance alone is not fatal to long arm jurisdiction. Longines-Wittnauer, supra, 15 N.Y.2d at 456, 261 N.Y.S.2d 8, 209 N.E.2d 68. But the contract in suit was not negotiated with the defendant present in New York. See Glassman v. Hyder, 23 N.Y. 2d 354, 362–363, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968). Moreover the "unilateral acts" of the plaintiff in attempting to get business for the defendant in New York are "hardly enough standing alone to sustain jurisdiction." McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967), citing Hanson v. Denckla, supra, 357 U.S. at 253, 78 S.Ct. 1228.

Under Section 302(a), a nondomiciliary may transact business in the state "through an agent." And if the nondomiciliary actually transacts business through an agent in New York though he is himself not present, there may be jurisdiction. Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970).

Here a true agency appears to have been created by the defendant.[2] The defendant made the plaintiff his personal manager and his attorney-in-fact and authorized it to sign contracts on his behalf. Mattgo was also to receive monies on Aaron's behalf in New York, to deposit the monies in New York, to deduct its fee in New York and to remit the balance to the plaintiff. Moreover, Mr. Aaron personally met with the plaintiff's officers in New York, as set forth above. "Physical presence in the state . . . during execution or performance of the contract is considered in determining in a particular case whether one has engaged in 'purposeful activity' or has invoked the protection of New York's laws, such as to constitute 'transacting business' for the purposes of

---

2. Significant distinctions may, of course, be made between an agent and an independent contractor. While unilateral activity on the part of a true agent may, in certain circumstances, be sufficient to support jurisdiction, Parke-Bernet, supra, it may not do so for an independent contractor. See e. g., Glassman v. Hyder, 23 N.Y. 354, 362, 296 N.Y. S.2d 783, 244 N.E.2d 259 (1968).

CPLR § 302(a)(1)." Franklin National Bank v. Krakow, 295 F.Supp. 910, 918 (D.D.C.1969), citing Longines-Wittnauer v. Barnes Reinecke, *supra*. See also, United States v. Montreal Trust Co., 358 F.2d 239, 243 (2 Cir. 1966), cert. denied, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); American Eutec. Weld. Alloys S. Co. v. Dytron Alloys Corp., 439 F.2d 428 (2 Cir. 1971); Standard Wine & L. Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967). Indeed, as Professor McLaughlin has stated, "[w]here a non-domiciliary physically comes to New York . . . it is one of the most concrete manifestations of his purposeful activity in New York. Particularly is this true where the defendant's presence in New York is to *perform*, as opposed to negotiate or execute, the contract. In the performance stage the consideration which has been promised is now rendered, the benefits of New York law are relied upon to protect the interests of both parties, and the risk of injury to the parties—not to mention strangers—is at its peak." McLaughlin, Practice Commentary to § 302 (McKinney's C 302:10 at p. 74). (Emphasis supplied). The defendant had the use of New York law in making a contract with a third party, Adirondack, as a result of the agreement in suit. Cf. International Shoe Co. v. State of Washington, *supra*, 326 U.S. at 319, 66 S.Ct..154.

All this makes the case different from the simpler one in which an agent sues his principal and claims jurisdiction solely on the basis of unilateral acts performed in New York by the agent himself. See *Parke-Bernet Galleries, supra*, 26 N.Y.2d at 19, n. 2, 308 N.Y.S.2d 337, 256 N.E.2d 506.

Here I think the plaintiff is properly relying on the activities of the defendant in New York to found jurisdiction. New York had become the "home base"

for Aaron in the negotiation of nonbaseball contracts, and for the receipt of monies belonging to him. Due process is not offended if jurisdiction over his person is found.[3]

The motion is denied.

---

3. The argument that Mr. Aaron is here from time to time with the Atlanta Braves to play baseball and that his business contacts here are, therefore, merely incidental, is not impressive. There is no doctrine of principal or dominant purpose involved. There is activity in New York no matter what his primary reason for coming into the state.