**BANKERS TRUST COMPANY, Plaintiff,**

v.

**Gary H. NORDHEIMER, Scott A. Nordheimer, Edmund A. Abramson and Ralph Weiser, Defendants.**

**No. 90 Civ. 2917 (DNE).**

United States District Court, S.D. New York.

Sept. 21, 1990.

---

Kirkland & Ellis, New York City (Francis M. Holozubiec, James H. Gale, of counsel), for plaintiff Bankers Trust Co.

Gaston & Snow, New York City (Douglas R. Jensen, W. Timothy Moy, of counsel), for defendants Gary H. Nordheimer and Scott A. Nordheimer.

Robinson, Brog, Leinwand, Reich, Genovese & Gluck, New York City (Anthony S. Genovese, of counsel), for defendants Edmund A. Abramson and Ralph Weiser.

## OPINION & ORDER

EDELSTEIN, District Judge:

Defendants Edmund Abramson and Ralph Weiser and defendants Gary and Scott Nordheimer have moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss this action on the ground that the Court lacks in personam jurisdiction. The action against the Nordheimers has been automatically stayed because involuntary bankruptcy proceedings have been filed against them. For the following reasons, defendants Abramson and Weiser's motion is denied.

## I. BACKGROUND

Bankers Trust has brought this action seeking to recover payment of a loan made to defendants. Defendants have moved to dismiss for lack of personal jurisdiction alleging that they do not have sufficient contacts with New York to warrant the exercise of jurisdiction in this action. The underlying facts concerning this motion are uncontested.

Defendants Abramson and Weiser are domiciliaries of Florida. In August 1985, the four defendants contacted Bankers Trust Company's office in White Plains, New York and asked Bankers Trust to provide financing for the planned purchase and renovation of the Sutton Place Hotel in New York City. Defendants sought this financing through two entities they formed expressly to pursue the Sutton Place Hotel venture: Sutton Hotel Corporation ("SHC") and Sutton Hotel Association ("SHA"). Each of the four defendants is a director and owns, either directly or indirectly, a 25% interest in SHC, a Delaware Corporation. SHC owns 24.5% of SHA, a New York limited partnership, and is SHA's general partner. Defendants Abramson and Weiser, as directors of SHC, voted along with the Nordheimers for a corporate resolution authorizing SHC to borrow money from Bankers Trust in New York.

Bankers Trust agreed to provide SHC with financing for the venture on the basis of each individual defendant's financial status. Accordingly, Bankers Trust required that each defendant personally guarantee payment of any loans made to SHC. Each defendant signed an unlimited guaranty of payment to the Bank for all liabilities incurred by SHC. Each guarantee expressly stated that it was to be governed by the law of the State of New York.

On the basis of these personal guarantees, Bankers Trust agreed to provide two types of financing. First, Bankers Trust gave a four million dollar letter of credit to Perpetual American Bank to secure repayment of a loan it had made in connection with the Sutton Place Hotel venture. The form of the letter of credit was changed on several occasions at defendants' request. In each case, SHC or SHA submitted an application to Bankers Trust in New York. To draw on the letter of credit, Perpetual is required to give written notice to Bankers Trust in New York that required loan payments have not been met.

The second type of financing was a line of credit established by Bankers Trust for SHC, from which each defendant was personally authorized to draw. SHC drew on this line of credit by submitting a letter to Bankers Trust in New York explaining the planned use for the money it intended to borrow. If the request was approved, Bankers Trust transferred money to SHC's

checking account at Bankers Trust in New York. In return, SHC would execute a promissory note for the amount drawn and deliver it to a Bankers Trust's office in either White Plains, New York or New York City.

Over time, SHA defaulted on its obligations to Perpetual. Before Perpetual could draw on the letter of credit, defendants Abramson and Weiser objected to the drawing on two grounds: first, the Perpetual loan was made to SHA, but the Bankers Trust Letter of Credit guaranteed SHC; second, SHA was created without Abramson and Weiser's consent and its creation reduced their interest in the Sutton Place Hotel venture.

As a result of the failure to make required payments, the parties met in Washington D.C. where they negotiated an "Amended and Restated Agreement" which defendants executed in Florida. As part of this agreement, each defendant acknowledged and reaffirmed the guaranty previously executed by him. The Amended and Restated Agreement sets out a schedule for defendants to pay off obligations that arose under the defendant's initial guaranty agreements.

## II. DISCUSSION

■ Personal jurisdiction in a diversity action is determined by the law of the forum in which the federal court sits. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Section 302(a)(1) of the New York Civil Practice Law and Rules (McKinney's 1972 & Supp.1989) ("CPLR 302(a)(1)") provides that "a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... [1] transacts any business within the state or [2] contracts anywhere to supply goods or services in the state...." In the instant action, personal jurisdiction is proper because defendants have both transacted business in New York and supplied goods and services to New York under CPLR 302(a)(1).

### A. Transacted Business

■ The standard for determining whether a defendant has transacted business under CPLR 302(a)(1) is whether the totality of circumstances establish that the defendant purposefully availed himself of the privilege of conducting activities in New York. *First City Federal Savings Bank v. Dennis*, 680 F.Supp. 579, 583 (S.D. N.Y.1988). The plaintiff's cause of action must arise from the acts that form the basis of the allegation that the defendant is transacting business in New York. *Id.* When a defendant is sued upon a loan made payable in New York and the loan is subsequently the sole basis of an agreement executed outside the state, the subsequent agreement does not rob the New York State courts of jurisdiction. *Lewis and Eugenia Van Wezel Foundation v. Guerdon Industries, Inc.*, 450 F.2d 1264, 1267 (2d Cir.1971). In such a case, the making of the loan is the transaction of business for purposes of CPLR 302(a)(1), not the agreement executed outside the state. *Id.*

■ Defendants Abramson and Weiser argue that jurisdiction is improper because the basis of plaintiff's cause of action, the Amended and Restated Agreement, has no relation to New York. According to defendants, only the events surrounding the negotiation of the agreement in Washington D.C. and its execution in Florida should be taken into account for determining whether they transacted business in New York pursuant to CPLR 302(a)(1). This argument, however, was expressly rejected by the Second Circuit in *Van Wezel.*

In *Van Wezel,* the defendant had borrowed money from a number of parties and had given promissory notes in return. *Id.* at 1265. The original notes were executed in New York. *Id.* Many of the notes were later exchanged for replacement notes executed outside of New York. *Id.* at 1266. The defendant argued that the court should look to each individual note and refuse to exercise jurisdiction under CPLR 302(a)(1) over any claim based on a note subsequently executed outside of New York. *Id.* at 1267. Characterizing this argument as a

"wooden approach," the Second Circuit held that jurisdiction existed because the transaction of business was the borrowing of money, not the act of negotiating and signing replacement notes. *Id.*

Defendants here rely on *Mattgo Enterprises, Inc. v. Aaron,* 374 F.Supp. 20 (S.D. N.Y.1974), and *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355 (2d Cir.1970), to support the position that only the circumstances directly surrounding the negotiation and execution of the Amended and Restated Agreement should be taken into account for purposes of determining personal jurisdiction. In *Mattgo,* the court found that the defendant had sufficient contacts with New York relating to the contract which was the basis of the lawsuit to justify the exercise of jurisdiction. *Mattgo, supra,* 374 F.Supp. at 24. In doing so, the court refused to consider an earlier separate and distinct contract between the parties. *Id.* at 23. In *Fontanetta,* the Second Circuit held that the written and oral parts of an examination for certification as a specialist in internal medicine were not part of the same transaction of business for purposes of CPLR 302(a)(1). *Fontanetta, supra,* 421 F.Supp. at 359. In reaching this conclusion, the court took into consideration that the examinations were completely different in nature, that the written and oral examinations were separated by four years in time, and that the oral part of the examination could be separated by geography at plaintiff's convenience. *Id.* at 358.

In the instant action, plaintiff is seeking to recover on defendants' obligation under a guaranty agreement which restructures previous obligations of defendants to plaintiff. Even though there are two sets of written guarantees, the guarantees cover the same obligation. The two sets of guarantees are therefore not separate and distinct contracts as in *Mattgo,* nor are they different in nature as were the exams in *Fontanetta.* Rather, as in *Van Wezel,* the transaction of business here was the borrowing of money, not the execution of the Amended and Restated Agreement. This transaction began when defendants approached Bankers Trust in New York for financing of the Sutton Place Hotel venture and culminated in the execution of the Amended and Restated Agreement. Plaintiff's cause of action to recover payment of a loan therefore arises directly from the transaction of business in New York.

■ Defendants next contend that if the transaction of business is interpreted as including the contacts in New York leading up to the Amended and Restated Agreement, the contacts of SHC and SHA with New York should not be attributed to them. In examining a nondomiciliary's contacts with New York, the acts of a corporation can be attributed to individuals under an agency theory for purposes of CPLR 302(a)(1). *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y. S.2d 195, 199, 522 N.E.2d 40, 44 (1988). A formal agency relationship is not required between the defendant and the corporate agent. *Id.* Rather, a plaintiff need only show that the agent transacting business engaged in purposeful activity in the state (1) that related to the transaction underlying the lawsuit, (2) that was taken for the benefit and with the knowledge of the defendant, and (3) over which the defendant exercised some control. *Id.*

■ It is uncontested that Abramson and Weiser together own 50% of SHC. Defendants argue that SHC only had 24.5% of SHA, which owned the Sutton Place Hotel, and that SHA was created without their consent. Defendants therefore contend that they did not have sufficient control to have the acts of either SHC or SHA attributed to them. Defendants, however, mischaracterize the issue by focusing on control of the Sutton Place Hotel. The issue is not whether defendants had control of the Sutton Place Hotel. The issue is whether defendants had sufficient control over the financial relationship entered into with Bankers Trust on behalf of SHC. The facts indicate that defendants clearly had such control.

Defendants each voted as a director of SHC for a corporate resolution authorizing SHC to borrow money from Bankers Trust in New York. Defendants each supplied

detailed financial reports to Bankers Trust in New York and each signed an identical personal guaranty for all liabilities incurred by SHC in order to induce Bankers Trust to provide financing for SHC. Without the defendants' votes and without their personal guarantees, no banking relationship would have been established. Defendants Abramson and Weiser therefore exercised more than "some" control; their participation was essential for SHC to obtain financing from Bankers Trust in New York.

 Defendants next contend that even if this control is found to exist, there are not sufficient contacts with New York to support jurisdiction. Although designation of New York as the site for payment of a promissory note is not alone sufficient to confer jurisdiction, *see, e.g., Glass v. Harris*, 687 F.Supp. 906 (S.D.N.Y.1988); *Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co.*, 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dept.1967), an examination of the totality of circumstances in the instant action reveals that defendants have more connections with New York than the payment of a promissory note. Defendants sought out Bankers Trust in New York to obtain financing, provided Bankers Trust in New York with reports of their personal financial status, and signed personal guarantees expressly covered by New York law.[1] Defendants were personally authorized to draw from a line of credit established by Bankers Trust in New York and SHC sent letters to Bankers Trust in New York seeking to draw on this line of credit. Borrowed funds were transferred into a checking account for SHC in New York and payments by SHC on the line of credit were sent to Bankers Trust in either White Plains, New York or New York City. Moreover, SHC submitted applications to Bankers Trust in New York to change the letter of credit securing Perpetual's loan to SHA. To draw on the letter of credit, Perpetual is required to provide written notice to Bankers Trust in New York that loan payments have not been met. These contacts are more than suffi-

cient purposeful activity in New York to constitute the transaction of business within the meaning of CPLR 302(a)(1). *See Sterling National Bank and Trust Company of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir.1975).

### B. Supply Goods or Services

 Defendants are also subject to jurisdiction under CPLR 302(a)(1) for supplying goods and services in New York. Making a guaranty of payment to a New York corporation is "supplying goods or services" in the state. *Manufacturers Hanover Leasing v. Ace Drilling Co.*, 720 F.Supp. 48, 49–50 (S.D.N.Y.1989); *Gaines Service Leasing Corp. v. Ashkenazy*, 635 F.Supp. 805, 807 (E.D.N.Y.1986); *Fashion Tanning, Inc. v. Shutzer Industries, Inc.*, 108 A.D.2d 485, 486, 489 N.Y.S.2d 791, 792 (3d Dept.1985). An agreement between parties which restates a previous obligation between them need not specify that payment be made in New York if the previous obligation was payable in New York. *Manufacturers Hanover Leasing, supra*, 720 F.Supp. at 49. Although defendants make much of the fact that the Restated and Amended Agreement does not specify where payment is to be made, the notes executed by SHC and guaranteed by defendants were payable to Bankers Trust in White Plains, New York. Moreover, as a matter of course, defendants have made payments due to Bankers Trust by delivering them to Bankers Trust in White Plains, New York or New York City. Defendants have therefore supplied goods or services in New York for the purposes of CPLR 302(a)(1).

### III. CONCLUSION

For the reasons outlined above, defendants motion to dismiss is denied in its entirety.

SO ORDERED.

---

**1.** While not dispositive in a question of personal jurisdiction, choice of law is a factor to be taken into account. *Manufacturers Hanover Leasing*

*v. Ace Drilling Co.*, 720 F.Supp. 48, 50 (S.D.N.Y.1989).