H.S.W. ENTERPRISES, INC., Plaintiff,

v.

WOO LAE OAK, INC., Samwoo Enterprises, Inc. and Hyun T. Choi, individually and d/b/a Woo Lae Oak Soho, Defendants/Counterclaim Plaintiffs,

v.

H.S.W. Enterprises, Inc., Jin Keon Jang, an Individual, and Kyung H. Paik, an individual, Third Party Defendants.

No. 00 Civ. 5582 (HB).

United States District Court,
S.D. New York.

April 13, 2001.

Charles Cummings, Baker & McKenzie, New York City, for plaintiff.

Carol A. Witschel, White and Case, L.L.P., New York City, for defendants.

## OPINION & ORDER

BAER, District Judge.

H.S.W. Enterprises, Inc. ("HSW") asserted claims against Woo Lae Oak, Inc., Samwoo Enterprises, Inc. and Hyun T. Choi (collectively, "defendants") for infringing its trademarks, "WOO LAE OAK" and "WOO LAE OAK OF SEOUL" (the "marks"). In their amended answer and counterclaims/third-party claims, defendants asserted various counterclaims against HSW and third-party claims against the individuals Jin Keon Jang ("Jang") and Jyung H. Paik ("Paik"). HSW, Jang and Paik (collectively, the "plaintiffs") moved for summary judgment on all counterclaims/third-party claims and affirmative defenses, and Paik moved to dismiss the first, second and third third-party claims. At oral argument, I denied summary judgment on the first counter-claim/first third-party claim for a declaratory judgment that defendants were not infringing the marks, the second counterclaim for cancellation of the marks, and the sixth counterclaim/fifth third-party claim for fraudulent registration of the trademarks.[1] I also denied summary judgment on the first, second, third, fifth and ninth affirmative defenses of fraud on the U.S. Patent Office ("PTO"), abandonment of the marks, laches, and consent, respectively.

Because my reasons for denying summary judgment on those counterclaims and affirmative defenses are set forth in the record, I do not discuss them here. For the reasons discussed below, HSW's motion for summary judgment on the remaining counterclaims and affirmative defenses is granted in part, and denied in part; Paik's motion to dismiss the third third-party claim for a declaratory judgment is granted.

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

#### A. BACKGROUND

This is a squabble between two closely connected families over which family is

---

1. Although at oral argument I inadvertently omitted the sixth counterclaim/fifth third-party claim from the list of those claims as to which I was denying summary judgment, my intent was clear from the context, as the same outstanding factual disputes rendered all three of the claims inappropriate for summary judgment.

entitled to use trademarks "Woo Lae Oak" and "Woo Lae Oak of Seoul" in connection with several high-end Korean restaurants of the same name. A great many of the factual issues in this case are disputed; what follows is a story cobbled together with those that are not.[2] In 1975, some combination of Jang, Chun Bong Lee ("Lee") and Soon Ock Kim ("Mrs. Kim") opened a Korean restaurant on Vermont Avenue in Los Angeles, California ("WLO–Vermont"). In 1976, Jang filed two applications with the PTO to register the marks; in November, 1977 the PTO issued the registrations. Jang applied for and registered the marks in his individual name, and not on behalf of the WLO–Vermont partnership. Soon after their issuance, Jang licensed the marks to his own California corporation, WLO–Jang. After the WLO–Vermont partnership broke up in the late 1970s, Jang and Lee went on to open successful "Woo Lae Oak" restaurants in midtown New York (burned down in 1994), Virginia (WLO–VA) and Los Angeles (WLO–LA). For each restaurant, Jang and Lee either acquired or formed a separate management corporation entirely owned by Jang and Lee. Thus, Woo Lae Oak, Inc. ("WLO–NY") operated the New York restaurant, Allen Services Corp. ("Allen") operated WLO–VA, and Samwoo operated WLO–LA.

In 1992 or thereabouts, Choi, Lee's son, opened a Woo Lae Oak restaurant in Beverly Hills, California (WLO–Beverly Hills) which he operated through his California corporation, Woo Lae Oak, Inc. (WLO–Choi, defendant in this action).[3] In 1996, Jang and Lee entered into a contract whereby Jang agreed to Lee's use of the marks for 20 years. The contract, signed by Lee and notarized, identified Jang as the "owner of the trademarks." (Hammond Declaration, Exh. 7.)

In 1997, Paik, Jang's daughter, incorporated HSW in Virginia. In the same year, Jang transferred his shares in Samwoo and Allen to HSW. Some time in or before 1997, Lee transferred her ownership interest in Samwoo and Allen to Choi, or otherwise gave Choi control over such securities.[4] In 1998, HSW and Choi entered into a Stock Transfer Agreement (the "Agreement") whereby HSW transferred all of its interests in Samwoo to Choi, and Choi transferred his interests in Allen to HSW (the "stock swap"). The net result being that Choi held 100% interest in Samwoo, and the LA–WLO restaurant Samwoo operated, and HSW held 100% interest in Allen, and the WLO–VA restaurant Allen operated. In the Agreement, the parties warranted that their respective shares of Samwoo and Allen were "free and clear of all liens, charges, and encumbrances." None of the stock swap documents referred to trademarks, and the issue of trademarks never arose during the negotiations.

In 1998 Mrs. Lee died. In 1999, Choi opened a new Woo Lae Oak restaurant in the Soho neighborhood of New York City ("WLO–Soho"). Later that year, on August 27, HSW notified Choi and Samwoo that HSW was terminating any right that Choi, Samwoo or any other affiliated entity had to use the marks. HSW filed the present action alleging trademark infringe-

---

2. Given the sheer volume of paper submitted by the parties with respect to the summary judgment motion and the several other motions submitted heretofore—some of which were withdrawn, another of which is the subject of later portions of this opinion—the need for "cobbling" is somewhat surprising.

3. Apparently, both Jang and Choi owned California corporations named Woo Lae Oak, Inc.

4. The record is unclear on how and when Choi acquired Lee's interest in Samwoo and Allen.

ment as well as other claims on July 27, 2000, thereby prompting defendants' counterclaims.

Such is the part of the story that the parties can agree to. There are, however, more factual areas of discord than concord. Nonetheless, some are worth spelling out, they include: whether Jang and Mrs. Kim entered into a contract in 1974 whereby Jang licensed marks to the WLO–Vermont partnership; the meaning of that contract, assuming it existed; Jang's status in the WLO-partnership and the degree of his control over WLO–Vermont; Jang's knowledge of his rights to the marks at the time of PTO applications; whether Jang made misstatements, knowingly or not, in affidavits he submitted to the PTO in 1983 to maintain the registrations; if Jang licensed the marks to Samwoo in 1989; if Lee asked Jang's permission for Choi to use the marks for WLO–Beverly Hills in 1991 or 1992; if the ensuing consent, if made, was made in writing; the royalties Jang collected on his licenses; Lee's knowledge about the marks and licenses; Choi's knowledge about the licenses; and whether Mrs. Choi asked Jang's permission to use the marks for WLO–Soho in 1999. It is the existence of at least some of these factual questions which are relevant and material that caused me to deny from the bench HSW's motion for summary judgment on the claims relating to who owns the trademarks and who, if anyone, is infringing. Those claims are hopelessly entangled in a factual thicket I have no ability to prune.

## B. DISCUSSION

### Motion For Summary Judgment Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to

judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). The court resolves all ambiguities and draws all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide. *Aldrich*, 963 F.2d at 523.

### The Third Counterclaim For Breach Of Contract

It is unclear how precisely defendants believe HSW, Jang and/or Paik's failure to disclose the existence of the marks constituted a breach of the Agreement. In their brief, defendants cite to three clauses in the Agreement, without ever explaining how HSW's failure to disclose amounted to a breach of the Agreement or citing to a single precedent in this jurisdiction or anyplace else.

The first clause is a warranty that each of Allen and Samwoo "had the corporate power to own its property and conduct its business in the manner in which it is now being conducted." The Court is at a loss as to how HSW's alleged ownership of the marks breached the above warranty and is disinclined to analyze that which is self-evidently inapplicable.

The second clause provided that each party's respective shares of Samwoo and Allen are "free and clear of all liens, charges, and encumbrances." Again, its unclear how this helps the defendants. Defendants provide no authority for the counter-intuitive proposition that a trade-

mark sublicense constitutes a "lien, charge or encumbrance."

The third clause, that neither party will "omit to state a material fact necessary to make the statements contained herein not misleading" is of mere illusory value to defendants. While it is without doubt that Choi would have considered the existence of the liens "material" had he anticipated this law suit, the Agreement contains no statement about trademarks or goodwill; thus their omission from negotiations and the Agreement did not render misleading any statements that HSW, Paik or Jang did in fact make.

 Thus, it is patently clear that HSW did not breach any of the three warranties provided in the agreement. Nor, contrary to defendants' claim (made without citation to any authority), did HSW breach the covenant of good faith and fair dealing. The alleged trademarks did not prevent defendants from getting the benefit of the contract—obtaining 100% ownership of Samwoo, *see M/A–COM Security Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir.1990), and HSW's failure to disclose the existence of the trademarks did not impair any contractual right accorded defendants in the Agreement. *See Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F.Supp.2d 199, 216 (N.D.N.Y.1999) ("[t]o demonstrate a breach of the covenant of good faith and fair dealing, parties must generally show that they have been deprived of a contract right by an affirmative act, not merely a failure to act"); *The Independent Order of Foresters v. Donaldson, Lufkin & Jen-*

*rette, Sec. Corp.*, 157 F.3d 933, 945 (2d Cir.1998) ("an implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct"). The only circumstance whereby omission could constitute a breach of the covenant is where the obligation to disclose the concealed information is "so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract." *M/A–COM Security Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir.1990). Here, it cannot be said that the obligation to disclose the trademarks was "so interwoven" into the Agreement. The Agreement is entirely silent as to intellectual property rights, and the subject never arose during the negotiations.

Consequently plaintiffs' motion for summary judgment on the breach of contract claim is granted.

**The Fourth Counterclaim For Fraudulent Inducement**

 The Court applies the choice-of-law rules of the state in which the trial court sits, which in this case is New York. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York choice-of-law rules require the Court to apply the law of the state that has the greatest interest in the resolution of the case. *See White v. ABCO Engineering Corp.*, 221 F.3d 293, 301 (2nd Cir.2000) (New York courts "seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute").[5]

**5.** The choice-of-law provision in the Agreement is not relevant to this analysis. "Under New York law, a contractual choice-of-law provision governs only a cause of action sounding in contract, not one sounding in tort," *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2nd Cir.1997), unless the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties. *See Turtur v. Rothschild Registry Int'l*, 26 F.3d 304, 309–310 (2nd Cir. 1994) (applying contractually chosen law to fraudulent inducement claim because the choice-of-law provision by its terms applied to disputes "arising out of or relating to" to the

■ Here, there are three states—New York, California and Virginia—that have an interest in the resolution of this case, and whose laws differ regarding the duty to disclose in a fraudulent inducement claim. To determine which state has the greatest interest in the application of its law, courts look to those facts or contacts that relate to the particular laws in conflict. The significant contacts in a fraudulent inducement claim are the parties' domiciles and the locus of the tort. *See Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996). In cases involving conduct-regulating laws, like fraudulent inducement, "[w]here the parties are domiciled in different states, the locus of the tort will almost always be determinative." *Id.* at 646 (a "conduct-regulating" law discourages specific conduct; whereas a loss-allocating controls the allocations of loss between parties to the tort). This formulation reflects the underlying view that states are primarily interested in regulating the conduct of their own domiciliaries, and secondarily interested in regulating the conduct of foreign domiciliaries present in the state.[6] Since fraudulent inducement is a conduct-regulating law, *id.,* and the parties are domiciled in different states—HSW in Virginia, Choi and Samwoo in California—the locus of the tort is determinative. Although the law is somewhat unresolved on this point, New York courts consider the locus of a fraud to be the place where the injury was inflicted and not the place where the fraudulent act originated. *La Luna Enters. v. CBS Corp.,* 74 F.Supp.2d 384, 389 (S.D.N.Y.1999); *Krock,* 97 F.3d at 645; *Bonjour Group v. Elan–Polo, Inc.,* 1997 U.S. Dist. LEXIS 10283,*15–16 (S.D.N.Y.1997). Here, Choi and Samwoo suffered the loss in California where they and the WLO–LA restaurant are domiciled; thus, the law of California applies to defendants' fourth counterclaim/third third-party claim for fraudulent inducement. *See id; Krock,* 97 F.3d at 645.

■ Under California law, the elements of a fraudulent inducement claim are: (a) misrepresentation; (b) scienter; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996). "Ordinarily, failure to disclose material facts known only to one party is not actionable fraud unless there is a fiduciary or confidential relationship imposing a duty to disclose." *Kruse v. Bank of America,* 202 Cal.App.3d 38, 52, 248 Cal.Rptr. 217 (1988); *see Mission Resources v. Texaco Inc.,* 1996 WL 468645, *6, 1996 U.S.App. LEXIS 21372, *17 (9th Cir.1996).

Because (1) Young Yoo ("Yoo"), a meat supplier from Chicago owed money by the defunct WLO–Chicago restaurant, initially proposed the stock swap to Jang, (2) the lack of direct communication between plaintiffs and defendants during the negotiation process intermediated by Yoo, (3) the absence of discussion of trademarks or goodwill during the negotiations, (4) the Agreement's silence as to trademarks and goodwill; and (5) the uncontested asser-

---

contract). Here, because the choice-of-law provision applies only to the construction of the contract—the Agreement "shall be construed" by Virginia law—the contractual provision does not apply, and the Court will apply the law of the state that has the greatest interest in the resolution of the case. ·

6. In other words, if all parties to a dispute are from the same state, that state is likely to have the greatest interest in the application of its laws. On the other hand, where parties are domiciled in different states—here California and Virginia—the two states' citizenship-based interests will be off-setting, and, at least with respect to a conduct-regulating law, the state in which the conduct took place will generally have the greatest interest.

tion by the plaintiff that Paik and Choi have never spoken to one another, I find no evidence that plaintiffs made a misrepresentation or that Jang and/or Paik had a particular duty to disclose the marks by virtue of the formerly close inter-familial connections.

Moreover, defendants had constructive notice of the trademarks. 15 U.S.C. § 1072 ("Registration of a mark on the principal register ... shall be constructive notice of the registrant's claim of ownership thereof"); *E–Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 606 (9th Cir.1983); *American Petrofina, Inc. v. Petrofina of California*, 1975 WL 21190, 1975 U.S. Dist. LEXIS 15006, *35 (C.D.Cal.1975). Defendants protest that Choi had no occasion to check the public records; however, I am hard pressed to understand why a sophisticated businessman operating several profitable restaurants across the country should be excused from the obligation of due diligence in advance of entering into a contract.

Consequently plaintiffs' motion for summary judgment on the fraudulent inducement claim is granted.

## The Fifth Counterclaim For Breach Of Fiduciary Duties

■ Defendants argue that Jang breached duties to Lee/Choi and Samwoo by (1) registering the marks for his personal use; (2) licensing the marks to WLO–Jang in 1980; (3) submitting a fraudulent affidavit to the PTO to maintain the registrations in 1983; (4) sublicensing the marks to Samwoo in 1989 without telling Lee, his partner in Samwoo; and (5) transferring the marks from WLO–Jang to HSW in 1997. Defendants assert claims on behalf of Samwoo and Choi.

■ Plaintiff argues, *inter alia*, the statute of limitations for each of the alleged breaches of fiduciary duty claims has expired. Claims of breach of fiduciary duty to a corporation arise under the law of the state of incorporation. *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 (2nd Cir.1980). Since defendants only charge Jang with breaching duties owed to California corporations—Samwoo and WLO–Vermont—, defendants' claims can survive summary judgment only if the applicable three year statute of limitations has not run. However, it is manifestly clear that defendants time to assert these claims has come and gone.

In 1996, Lee entered into a contract with Jang that acknowledged Jang's ownership of the trademarks. The contract, dated and notarized on December 5, 1996, gave Lee the right "to use the trademarks" for a period of twenty years in connection with a new restaurant (never opened) on 6th Avenue in New York City. (Hammond Declaration, Exh. 7.) The contract identified Jang as "the owner of the trademarks" and stated that Jang and Lee had been using the trademarks since 1975. (*Id.*) Thus, no later than 1996, Lee knew or should have known that (1) Jang had registered the marks in his own name, and that (2) Samwoo's ability to use the marks was subject to Jang's ownership interest.[7]

Lee died in 1998. Under California law, if a person entitled to bring an action dies before the expiration of the applicable limitations period, the decedent's successor may commence an action either during the original limitations period or six months after the person's death, whichever is later. Cal. Civ. Pro. § 336.1. Thus, Choi's statutory period in which to bring claims

7. What Lee knew of Jang's supposed sublicense to Samwoo in 1989, or whether in 1990/1991 Lee asked Jang's permission for her son's use of the marks in connection with WLO–Beverly Hills, I need not resolve here.

144

on behalf of Lee, assuming he qualifies as a successor under the California statute, began in 1996 and elapsed well prior to the filing of the present action in 2000.

■ Because Lee owned half of Samwoo's shares in 1996 and was Jang's only partner in the business, her knowledge is imputed to Samwoo. *See Bourns, Inc. v. Wells Fargo Bank, N.A.*, 1994 WL 36998, \*3, 1994 U.S. Dist. LEXIS 1164, \*7 (N.D.Cal.1994) ("[i]t is a fundamental principle of both corporate and agency law that a corporation has knowledge of all matters known to any of its officers or directors"). Thus, Samwoo's statutory period in which to bring claims for breach of fiduciary duty ended no later than 1999, three years from the date of the 1996 contract.

■ Choi's claim not to have known about the marks until 1999, when he received a letter from HSW terminating Choi's rights to use the marks, is irrelevant to plaintiffs' statute of limitations defense. Choi does not, and cannot, claim that any of HSW, Jang or Paik owed him a fiduciary duty, since all the conduct of which he complains preceded his acquiring Lee's interest in Samwoo and Allen. Rather, Choi can only assert claims on behalf of Samwoo and Lee. As indicated above, with respect to those claims, the issue is when Lee knew of the marks, not Choi.

Consequently plaintiffs' motion for summary judgment on the breach of fiduciary duty claim is granted.

## PAIK'S MOTION TO DISMISS

### First Third–Party Complaint—Declaratory Judgment Against Paik [8]

At oral argument, I found that there remain substantial genuine issues of material fact as to who owns the trademarks and denied summary judgment on the first counterclaim/first third party claim for a declaratory judgment of non-infringement. However, I left open the question of whether Paik is entitled to summary judgment or dismissal under FRCP 12(b)(6) of the same claim on the basis of lack of personal jurisdiction. Given the Court's decision in this opinion to grant plaintiffs' motion for summary judgment as against all parties of the breach of contract, fraudulent inducement and breach of fiduciary duties claims, there is no practical reason for Paik to remain in this case. There are no surviving monetary claims and Paik, whether party to the case or not, would be subject to any declaratory judgment awarded against HSW as owner of the marks. However, in an abundance of caution, I will now discuss the legal merits of Paik's arguments that the declaratory judgment action against her should be dismissed. Although she moves both to dismiss and for summary judgment of the declaratory judgment third-party claim, I shall construe Paik's motion as a motion to dismiss.

Defendants assert specific jurisdiction over Paik under New York long-arm statute, C.P.L.R. § 302(a)(1), on two theories: agency and veil piercing.

8. Since I am granting plaintiffs' summary judgment motion on two of the third-party claims against Paik—the breach of contract and fraudulent inducement claims—I need not address them again in the context of her motion to dismiss. However, I note that the same reasons that require dismissal of the declaratory judgment claim against Paik would also dictate that the other two claims asserted against Paik also be dismissed. In fact, the argument for dismissing the breach of contract and fraudulent inducement claims is even more compelling given the lack of any connection between those claims and HSW's trademark infringement action, the filing of which constitutes Paik's only connection to the forum.

### 1. Agency

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the court "must accept the material facts alleged in the compliant as true." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

 Under the New York long arm statute, for this Court to exercise power over Paik, the defendants must have alleged a nexus between Paik's contacts with New York and the underlying dispute. *See Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757 (2nd Cir.1983). Defendants allege a single contact between Paik and New York—specifically, she caused HSW to file suit against defendants in New York. "In examining a nondomiciliary's contacts with New York, the acts of a corporation can be attributed to individuals under an agency theory for purposes of CPLR 302(a)(1)." *Bankers Trust Co. v. Nordheimer,* 746 F.Supp. 363, 367 (S.D.N.Y.1990).

> A formal agency relationship is not required between the defendant and the corporate agent. Rather, a plaintiff need only show that the agent transacting business engaged in purposeful activity in the state (1) that related to the transaction underlying the lawsuit, (2) that was taken for the benefit and with the knowledge of the defendant, and (3) over which the defendant exercised some control.

*Id.* Here, Paik's purposeful activity in the state went no further than causing HSW to file a trademark law suit. The conduct of an agent outside of New York—defendants do not allege that Paik herself ever came to New York, sent documents to New York or spoke to anyone in New York—does not constitute "purposeful activity in the state," and therefore does not give rise to personal jurisdiction. The fact that HSW consented to jurisdiction by filing the law suit, at least with respect to defendants' counterclaim for a declaratory judgment of non-infringement, cannot subject Paik to jurisdiction unless HSW is a mere fiction.

### 2. piercing the corporate veil

 Since Paik is not subject to jurisdiction as HSW's agent, she is properly before the Court only if HSW is not entitled to an identity separate from Paik. Because, "under New York's choice-of-law rules the law of the state in which a corporation is incorporated governs attempts to pierce the corporate veil," *Quinn v. Teti,* 2000 WL 1616806, *2, 2000 U.S.App. LEXIS 27210, *8 (2nd Cir.2000), and since HSW is a Virginia corporation, Virginia law governs this issue. Virginia courts pierce the veil of immunity only in "extraordinary" cases, *see Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.,* 974 F.2d 545, 548 (4th Cir.1992), and require plaintiff to show both that (1) "the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally," *and* (2) "that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Id.* A recent decision defines the "legal wrong" standard as "using the corporate form to (i) evade personal obligations, (ii) perpetuate fraud or a crime, or (iii) commit injustice." *C.F. Trust v. First Flight,* (4th Cir.2000). Defendants have not alleged that Paik used HSW to commit a cognizable wrong. Defendants apparently premise their veil piercing on a conspiracy between Paik and Jang to conceal the marks from Choi by

creating a holding corporation that could execute the Agreement whereby Choi would be forever deprived of his right to use the "Woo Lae Oak" name.[9] Apart from the fact the merits of such a conspiracy are obscured to the Court, the alleged object of the conspiracy—not disclosing the existence of the marks to Choi—is not a legal wrong, for the reasons discussed in regards to the breach of contract and fraudulent inducement counterclaims/third-party claims.

Therefore Paik's motion to dismiss defendants' claim for a declaratory judgment is granted.

## CONCLUSION

For the aforementioned reasons, the motion of HSW and third-party defendants Jang and Paik ("plaintiffs") for summary judgment on the third counterclaim/second third-party claim for breach of contract, fourth counterclaim/third third-party claim for fraudulent inducement and fifth counterclaim/fourth third-party claim for breach of fiduciary duties is granted. Paik's motion to dismiss the first third-party complaint for a declaratory judgment is also granted. I do not reach Paik's motion to dismiss the second third-party claim and third third-party claim as I am granting all plaintiffs summary judgment as to those claims. To complete the record, it is worth repeating here that at the oral argument I denied summary judgment on the first counterclaim, the second counterclaim/first third-party claim, the sixth counterclaim/fifth third-party claim, as well as the first, third, and fifth through ninth affirmative defenses.

The trial of the remaining issues will commence on May 29, 2001 at 9:30 a.m. Your joint pre-trial order is due on May 18, 2001. Please read the rules with respect to objections to exhibits, motions in limine, voir dire, proposed jury instructions and other pre-trial issues that may arise, and if necessary schedule a conference with the Court.

Please read the rules with respect to exhibits

**SO ORDERED**

---

**9.** At oral argument, Mr. Hammond, counsel for defendants, stated that "a grander scheme that was used to defraud Mr. Choi in connection with the stock transfer agreement." (T. at 9).