94 F.3d 652
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MISSION RESOURCES, INC.--II, Plaintiff-Appellant,
v.
TEXACO INC.; Texaco Refining and Marketing Inc.; Texaco
Trading & Transportation Inc.; Texaco Exploration
and Production Inc., Defendants-Appellees.
 No. 95-15242.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 16, 1996.
Decided Aug. 16, 1996.
 
 Before: NORRIS, T.G. NELSON and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Mission Resources, Inc.--II, ("Mission") appeals from the judgment entered by the district court in favor of appellee Texaco Trading & Transportation Inc. ("Texaco Trading") after the jury returned a general verdict in Mission's favor, but awarded zero damages. Mission also appeals the adverse summary judgment on its claims for damages under Cal.Pub.Util.Code § 2106, loss of profits on the sale of crude oil, intentional interference with contractual relations and prospective economic advantage, and fraud. Finally, Mission appeals the district court's granting of Texaco Trading's motion in limine to exclude evidence of certain permits issued under the Mineral Leasing Act ("MLA"). The district court's jurisdiction rested on 28 U.S.C. §§ 1441(a) and 1332(a)(1). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 The core of Mission's lawsuit is that Texaco Trading's failure or refusal to transport oil from the Patrino property via its crude oil pipelines caused damages to Mission in: (1) Lost profits on the sale of crude, because the only other option to transport the crude oil was by tanker truck, which Mission claims was inefficient and more expensive; and (2) Diminution in value on the sale of the Patrino property, because Texaco Trading refused pipeline access.
 
 
 4
 Mission's first amended complaint alleged six claims under California law: breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage, fraud, violation of Cal.Pub.Util.Code § 2106, and unfair competition in violation of Cal.Bus. & Prof.Code § 17200 et seq.
 
 
 5
 The district court granted defendants' motion for summary judgment on all but one of Mission's claims, including Mission's claim for damages under Pub.Util.Code § 2106 for the loss of profits on the sale of crude oil from the Patrino property.[1] Thus, the sole issue left for trial was Mission's claim for damages under Pub.Util.Code § 2106, for the diminution in the sale value of the Patrino property.
 
 
 6
 Before trial, the district court ruled in limine excluding any evidence of Texaco Trading's MLA permits, which are issued by the Department of the Interior for pipelines which cross federal lands. At the close of plaintiff's case, the district court granted Texaco Trading's motion for a directed verdict dismissing Mission's claims for punitive damages and dismissing Texaco Inc. as a party.
 
 
 7
 At the conclusion of the trial, the jury was instructed that it could find for Mission only if it found "each of the following elements: (1) that Texaco operated a pipeline or pipelines connected to the Patrino property as a common carrier; (2) that Texaco's refusal to carry oil from the Patrino property caused injury to Mission; and (3) proof of the amount of damages suffered by Mission." The district court largely adopted Mission's requested charge, which instructed the jury that it could only sign the general verdict form for Mission if all elements of Mission's case had been proven, including liability based on an "unequivocal intention" by defendants to dedicate their San Joaquin Valley pipeline system to public use, as well as proof of causation and damages. Mission did not request a nominal damages instruction. The district court further instructed the jury that:
 
 
 8
 If the plaintiff has failed to prove each of the things on which plaintiff has the burden of proof, your verdict should be for the defendant. If you find that each of the things on which plaintiff has the burden of proof have been proven, your verdict should be for the plaintiff.
 
 
 9
 The jury was given two general verdict forms, one for Texaco Trading and one for Mission. The jury was instructed to sign the verdict form for Mission, if the jury found for Mission, or the form for Texaco Trading, if it found for Texaco Trading. During its deliberations, the jury asked the following question: "Do we consider damages to Mission only on the sale of the property or do we consider damages while Mission was operating the field as well?" The court responded in writing that the jury may consider damages to Mission only on the sale of the property.
 
 
 10
 The jury returned a general verdict for Mission, but in the space provided for the amount of damages inserted "zero" for diminution in value of the property. Before dismissing the jury, the court inquired whether either party was claiming that the verdict was inconsistent. Neither party claimed any inconsistency in the verdict.
 
 
 11
 Texaco Trading moved for entry of judgment in its favor. The district court entered "Judgment for Defendant." It held that the "zero" damages verdict required entry of judgment for Texaco Trading, because Mission failed to prove damages, which was an essential element of its claim. Mission moved for a new trial limited to the amount of damages, or in the alternative on all issues, or to amend the judgment to reflect that Mission prevailed on all issues except the amount of damages. Mission's basis for this motion was that the verdict was inconsistent. The court denied Mission's motion on the ground that Mission had waived its right to object to the verdict as inconsistent, in that the court inquired repeatedly whether Mission considered the verdict inconsistent before dismissing the jury, and Mission stated that it did not. Further, Mission did not argue that the verdict was inconsistent in its opposition to Texaco Trading's motion for entry of judgment.
 
 I. General Verdict With Zero Damages
 
 12
 Mission cites Wilks v. Reyes, 5 F.3d 412, 415 (9th Cir.1993), in support of its contention for de novo review of district court's determination of whether verdict was consistent. It cites Los Angeles Nut House v. Holiday Hardware Corp., 825 F.2d 1351 (9th Cir.1987), for the proposition that federal law governs inconsistent verdicts, but then proceeds to argue that state law could also apply. However, this case does not involve a general verdict which is inconsistent with special interrogatories submitted to the jury. Therefore, Fed.R.Civ.P. 49(b), Wilks, and Los Angeles Nut House are inapplicable. The jury in this case returned an internally inconsistent verdict: in order to return a general verdict for Mission, the jury needed to find damages; however, it returned a general verdict for Mission, but awarded zero damages. We review the district court's entry of judgment and denial of motion for new trial, after the jury returns an internally inconsistent verdict awarding zero damages, for abuse of discretion. Philippine Nat'l Oil Co. v. Garrett Corp., 724 F.2d 803, 805 (9th Cir.1984).
 
 
 13
 In Philippine Nat'l Oil Co., the jury returned a general verdict for Philippine National Oil Co. ("PNOC") on a negligent misrepresentation claim, but awarded PNOC zero damages. Id. at 804. The jury was instructed that damages were an essential element of the claim. Id. at 805. PNOC did not object to the verdict prior to the dismissal of the jury and subsequently moved for a new trial, which was denied. Id. at 804. As is the case here, that case did not involve a verdict inconsistent with special interrogatories: "What PNOC complains of is a jury verdict in its favor that fails to award damages." Id. at 805. We held that "PNOC waived its right to object to the verdict by failing to object when the verdict was read." Id.
 
 
 14
 Here, Mission waived its right to object to the verdict. After the verdict was returned, the following discussion took place:
 
 
 15
 THE COURT: We won't enter anything at the present time. But is there any concern that the verdict is inconsistent? If there is, we'll bring the jury back.
 
 
 16
 MR. CARRUTH [TEXACO]: Absolutely not. It is consistent. But Mr. Halling--go ahead. Just let me finish. He has the burden of all four of those issues.
 
 
 17
 THE COURT: I want to hear from Mr. Halling if he agrees that the verdict is not inconsistent.
 
 
 18
 MR. HALLING [MISSION]: Well, Your Honor, I believe that the verdict is a general verdict and it is found for the plaintiff.
 
 
 19
 THE COURT: I'm not trying to get what you think it is. Is there any inconsistency in the verdict, as far as you are concerned?
 
 
 20
 MR. HALLING: There is no internal inconsistency, but I believe having found liability, it's hard for me to understand on the record how there can be no damages.
 
 
 21
 THE COURT: I'm not sure I agree with you there, but we can talk about that later. But my point is--all right. The parties have answered my question. All right.
 
 
 22
 ER 117-18 (emphasis added).
 
 
 23
 In denying Mission's motion for a new trial, the district court correctly found that at the time the verdict was returned, Mission took the position that the verdict was not inconsistent. Even if Mission did not waive its right to object to the verdict, the district court would not have abused its discretion in entering judgment in favor of Texaco Trading. Id. at 806.
 
 II. PUC Statute of Limitations
 
 24
 Mission argues that the district court erred in applying the two-year statute of limitations under Pub.Util.Code § 735 to Mission's claim under Pub.Util. Code § 2106 for damages for lost profits. It contends that the three-year statute of limitations set forth in Pub.Util.Code § 736 is applicable. Even if the two-year statute applied, Mission contends that the district court erred in granting summary judgment in Texaco Trading's favor because Mission presented evidence of damages arising from its sales of crude oil within the two-year period.
 
 
 25
 The district court's granting of summary judgment is subject to de novo review. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). In reviewing decisions of the district court, the court of appeals may affirm on any ground finding support in the record. Smith v. Block, 784 F.2d 993, 996, fn. 4 (9th Cir.1986); Salmeron v. United States, 724 F.2d 1357 (9th Cir.1983).
 
 
 26
 Mission's fifth cause of action in its amended complaint alleges a violation of Cal.Pub.Util.Code § 2106, which provides liability for:
 
 
 27
 Any public utility which does, causes to be done, or permits any act, matter or thing prohibited or declared unlawful, or which omits to any act, matter or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission....
 
 
 28
 Two statutes of limitations govern actions under the Cal.Pub.Util.Code. Section 735 provides:
 
 
 29
 All complaints for damages resulting from a violation of any of the provisions of this part, except Sections 494 and 532, shall either be filed with the commission, or where concurrent jurisdiction of the cause of action is vested by the Constitution and laws of this State, in the courts, in any court of competent jurisdiction, within two years from the time the cause of action accrues, and not after.
 
 
 30
 Cal.Pub.Util.Code § 735. Cal.Pub.Util.Code § 736 provides a three-year statute of limitations for actions brought under §§ 494 and 532.
 
 
 31
 Mission did not sue under § 494 or § 532, but under § 2106. Its amended complaint makes no mention of §§ 494 or 532. Mission argues, nonetheless, that its complaint states causes of action under §§ 494 and 532 sufficient to satisfy federal notice pleading requirements. Section 494 applies only to common carrier charges that are different from "charges specified in its schedule filed and in effect at the time" or to the extension of privileges not "regularly and uniformly extended to all corporations and persons."
 
 
 32
 Section 532 similarly requires a public utility to charge only the rates "specified in its schedules on file and in effect at the time...." Mission argues that these statutes are broad catch-all prohibitions against discriminating in the operation of Texaco Trading's pipelines.
 
 
 33
 By their plain meaning, these statutes apply only to noncompliance with filed rates and schedules. Texaco Trading, of course, has not filed any tariffs. It contends that its pipelines are private and has steadfastly maintained that it is not a common carrier or public utility under California law. Mission's contention, that the "extension of privileges" clauses in §§ 494 and 532 apply to the operation of pipelines in the absence of filed tariffs is unsupported by the plain language of the statutes and their setting and context in Division 1, Part 1, Chapter 3, of the Cal.Pub.Util.Code. Mission's claim is not one to which the three-year statute of limitations of § 736 applies.
 
 
 34
 Mission argues that the district court nonetheless erred in granting summary judgment to defendants, because it presented evidence of damages within the two-year limitations period of § 735. Mission claims that Steven West of Anschutz attempted to obtain pipeline access, which was denied, between September 17, 1990, (the two-year limitation cutoff) and November 1990 (when Anschutz eventually obtained pipeline access). Mission argues that it suffered damages, because Anschutz agreed, as part of its crude oil purchase agreement with Mission:
 
 
 35
 AMT [Anschutz] will use its best efforts to ship the crudes that have available pipeline transportation means subject to the economic positions being the same as trucking or better economics. Any savings or advantage over trucking will be split with the appropriate seller.
 
 
 36
 Thus, if Texaco Trading denied Anschutz access between September 17, and November, 1990, Mission contends, it suffered damages within the two-year period.
 
 
 37
 However, there was no evidence before the district court at summary judgment that Anschutz requested pipeline access during the relevant time period. Absent such a request, Texaco Trading could not have denied access. Mission asserts that West "testified at trial that he asked [Texaco Trading for pipeline access] each and every month from the inception of the contract with Mission in June 1990...." West's trial testimony is irrelevant. Lippi v. City Bank, 955 F.2d 599, 604 (9th Cir.1992) (appellate "review is limited to the record presented to the district court at the time of summary judgment").
 
 
 38
 At summary judgment, Mission argued that "Mission and its buyers during this period, Kern Oil (February 1989-June 1989), Petrosource/Enron (June 1989-June 1990), and Anschutz (June 1990-December 1990), sought pipeline transportation from Texaco." In support of this contention, Mission cited West's deposition testimony (p. 61). However, West there stated only that he contacted Dick Murray of Texaco around the date of June 25, 1990, regarding transportation of crude oil. Mission also cited West's deposition testimony for the proposition that Anschutz contacted Texaco regarding pipeline transportation (pp. 158-61). However, West stated that these conversations took place in July or August of 1990. Therefore, there was no evidence before the district court at the time of summary judgment that Anschutz had attempted unsuccessfully to obtain transportation of its crude oil through Texaco's pipelines between September 17, and November 1990.[2]
 
 III. Fraud Claim
 
 39
 Mission contends that Texaco Trading fraudulently misrepresented to Mission that Texaco Trading's 10" mainline did not transport oil in a southerly direction. After the sale of the Patrino property in 1988, Texaco Trading reconfigured its pipelines so that light crude could flow through the 10" mainline in a southerly direction to Four Corners and Line 63, which serve the Los Angeles market. Thus, it claims that the statement of Joyce and Murray of Texaco Trading to Mission's employees and West of Anschutz that the 10" mainline ran in the opposite, northerly, direction was false.
 
 
 40
 Mission argues detrimental reliance in that if it had known the true direction of the mainline, it could have marketed its oil in the Los Angeles market. Mission claims it could have complained to the Department of the Interior, which was investigating Texaco Trading at that time for MLA permit violations, and to the State of California, which eventually became involved in the Long Beach litigation with Texaco. Mission contends that its complaints could have resulted in its obtaining access to Texaco Trading's pipelines. In its opposition to the motion for summary judgment, it contended that these allegations raised a genuine issue of material fact concerning the element of detrimental reliance.
 
 
 41
 In order to prevail on its fraud claim, Mission must establish detrimental reliance on the misrepresentation. Cal.Civ.Code §§ 1709, 1710; Hobart v. Hobart Estate Co., 26 Cal.2d 412, 422 (1945). Mission must also show that Texaco Trading had a duty to disclose these facts about the 10" pipeline. "Ordinarily, failure to disclose material facts known only to one party is not actionable fraud unless there is a fiduciary or confidential relationship imposing a duty to disclose." Kruse v. Bank of America, 202 Cal.App.3d 52 (1985).
 
 
 42
 Nothing in the record supports Mission's claim that had it complained to the appropriate authorities about the denial of access, Texaco Trading would have granted access to its 10" mainline. Mission's reasoning is far too attenuated and speculative. Further, Texaco Trading merely allegedly employed a falsehood to do what it otherwise could have accomplished directly. It cannot be said that Mission relied on the misrepresentation to its detriment in suffering denial of access to the pipeline. Mission's fraud claim is without substance. See Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1184 (1993) (terminated employee cannot maintain fraud cause of action against former employer, because employee cannot be said to have detrimentally relied on falsehood, where employer "employed a falsehood to do what it otherwise could have accomplished directly"). Mission contends that Lazar v. Superior Court, 12 Cal.4th 631 (1996), limits Hunter in the context of detrimental reliance. It is mistaken. In Hunter, there was no detrimental reliance on the employer's misrepresentations, because the employer would have terminated the plaintiff regardless. Hunter, 6 Cal.4th at 1184. In Lazar, there was detrimental reliance, because the employer's misrepresentation was intended to and actually did induce the plaintiff to enter into an employment contract and to relocate across the country. Lazar, 12 Cal.4th at 641. As is the case here, there was no detrimental reliance in Hunter because the party making the misrepresentation employed a falsehood to accomplish what it could have accomplished through other means.[3]
 
 
 43
 IV. Intentional Interference with Contract Claim
 
 
 44
 On its claim for tortious interference with contractual relations, as far as can be gleaned from its brief, Mission contends that the district court erred on summary judgment by determining that: (1) Anschutz did not share savings with Mission when it entered into a transportation agreement with Texaco Trading; (2) Texaco Trading lacked the requisite knowledge of the agreement between Mission and Anschutz to share savings; and (3) the type of injury alleged was not compensable in an intentional interference claim.
 
 
 45
 "The most general application of the rule is to cases where the party with whom the plaintiff has entered into an agreement has been induced to breach it, but the rule is also applicable where the plaintiff's performance has been prevented or rendered more expensive or burdensome...." Lipman v. Brisbane Elementary Sch. Dist., 55 Cal.2d 224, 232 (1961). A necessary requisite to liability is proof that the defendant's actions were intended to interfere with the contractual relationship. Seaman's Direct Buying Serv., Inc. v. Standard Oil Co., 36 Cal.3d 766 (1984), overruled on other issues, Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal.4th 85, 87 (Cal.1995). A claim for interference with contract is governed by a two-year statute of limitations. Richardson v. Allstate Ins. Co., 117 Cal.App.3d 8, 11-12 (1981). Therefore, any claim must relate to Mission's contract with Anschutz, between September 17 and November 1990, when Anschutz entered into a transportation agreement with Texaco Trading.
 
 
 46
 As discussed above, there simply was no evidence at summary judgment that Anschutz entered into a transportation agreement with Texaco Trading in September and October 1990.[4] There also was no evidence that Texaco Trading knew of any agreement between Anschutz and Mission to share savings.
 
 
 47
 Vague awareness of some generalized harm is insufficient. Mission's reliance on Ramona Manor Convalescent Hosp. v. Care Enter., 177 Cal.App.3d 1120 (1986), is misplaced. There, the lessee's decision to hold over beyond the term of its lease was made with the knowledge that such action would frustrate the legitimate expectations of the new lessee who wanted to move into the nursing home. Id. at 1133. Since there was no evidence that Texaco Trading knew that its denial of access would interfere with Mission's agreement with Anschutz to share savings, summary judgment was proper.[5]
 
 
 48
 V. Interference With Prospective Economic Advantage Claim
 
 
 49
 On its intentional interference with prospective advantage claim, Mission contends that the district court erred: (1) In holding that loss of some profits cannot suffice to satisfy the actual disruption requirement; and (2) In holding that Mission did not have sufficiently definite prospective relationships with potential purchasers.
 
 
 50
 First, Mission argues that as a result of Texaco's denial of pipeline access, Mission's contracts with Anschutz and Santa Fe were less profitable than they otherwise would have been. However, the failure to achieve the maximum profits contemplated under a contract is insufficient to establish the element of actual "disruption" of the relationship. See Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1129 n. 8 (1970).[6]
 
 
 51
 Mission did not come forward with any evidence that it had any economic relationship with any purchasers other than Anschutz and Santa Fe. It argues, however, that "Mission solicited buyers from throughout the state". This is insufficient. See Wilson v. Loew's Inc., 142 Cal.App.2d 183, 194-195 (1956). Mission fails to provide any evidence that it ever entered into an economic relationship with any of these parties. The law precludes recovery for overly speculative expectancies by initially requiring proof that the business relationship contained "the probability of future economic benefit to the plaintiff." Youst v. Longo, 43 Cal.3d 64, 71 (1987). "Although varying language has been used to express this threshold requirement, the cases generally agree it must be reasonably probable that the prospective economic advantage would have been realized but for defendants' interference." Id. Mission's showing on summary judgment failed to prove a sufficient level of certainty regarding what were only hypothetical relationships.
 
 VI. Motion in limine re MLA permits
 
 52
 Texaco Trading moved in limine to exclude evidence of rights-of-way obtained by Texaco or its predecessors from the United States Department of the Interior under the MLA, 30 U.S.C. § 185, on the ground that the evidence was irrelevant and unduly prejudicial. The district court granted Texaco Trading's motion on the basis that the relevance of the MLA permits was too tangential to the resolution of the claim that Texaco was a common carrier under California law, and any relevance that the MLA permits might have was outweighed by prejudice to Texaco and the real possibility of jury confusion.
 
 
 53
 The trial court's evidentiary rulings may be reversed only upon a showing of abuse of discretion. City of Long Beach v. Standard Oil Co., 46 F.3d 929, 936 (9th Cir.1995). The erroneous exclusion of evidence is reversible only if appellant demonstrates prejudice. Id.; Jauregui v. City of Glendale, 852 F.2d 1128, 1132-33 (9th Cir.1988). Prejudice can be found only if the court concludes that an error tainted the result. Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1470 n. 4 (9th Cir.1992).
 
 
 54
 Mission contends that the district court abused its discretion because the MLA permits were "highly probative and legally compelled", because the California Supreme Court stated that MLA permits constitute "substantial evidence that would support a finding that a federal permittee had dedicated its pipeline to public use for the common carriage...." Richfield Oil. Corp. v. Public Util. Comm'n, 54 Cal.2d 419, 441 (1960).
 
 
 55
 Texaco's MLA permits cover pipelines not connected to the Patrino property. The California Supreme Court recognized that the common carrier requirements of the MLA are different from the requirements under California law. Id. California law requires an "intent to dedicate the property to serve the public" to establish common carrier status. Id. Federal law merely requires that the pipeline owner "accept, convey, transport, or purchase without discrimination all oil or gas delivered to a pipeline." 30 U.S.C. § 185(r)(2)(A).
 
 
 56
 The district court reasoned that "[t]here are too many intervening issues of statutory construction that need to be resolved before it can be determined that this evidence is relevant in any event." It correctly observed that the California Supreme Court's statement in Richfield regarding "substantial evidence ... to support a finding ... of dedicat[ion]," "does not make this evidence relevant as a matter of law." Finally, it concluded that the use of federal MLA "common carrier" permits to prove California common carrier obligations would be unduly confusing to the jury, especially in light of the fact that the pipelines were not connected to the Patrino property.
 
 
 57
 As all of the factors weighed and considered by the district court indicate, this is a highly discretionary ruling. In the circumstances here, we conclude that the district court did not abuse its discretion in excluding evidence of the MLA permits.
 
 
 58
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In its Notice of Appeal, Mission stated that it appeals "ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT filed April 28, 1994". However, in its briefs, Mission does not challenge the district court's granting of summary judgment in Texaco Trading's favor on its claims for breach of contract and unfair competition under Cal.Bus. & Prof.Code § 17200, and dismissal of Texaco Exploration and Production Inc. These issues are therefore waived. See Fed.R.App.P. 28(a); Simpson v. Union Oil Co., 411 F.2d 897, 900 n. 2 (9th Cir.); rev'd on other grounds, 396 U.S. 13 (1969)
 
 
 [2]
 Further, any claim to damages based on denial of pipeline access is speculative. Once Anschutz entered into a transportation agreement with Texaco Trading, it did not share any savings with Mission, if there were any. Thus, there was no automatically guaranteed increase in revenue from pipeline access, as Mission theorized. Or, if there were any, they were not shared with Mission
 
 
 [3]
 Here too, Mission's damage theory is speculative. During the relevant time period, PetroSource/Enron and Anschutz were Mission's purchasers. There is no showing that these purchasers would have shared any savings with Mission. Mission does not allege that it had an agreement with Petrosource/Enron whereby it would share savings derived from pipeline access with Mission. Moreover, although Anschutz eventually entered into a transportation agreement with Texaco Trading, either there were no savings to share, or Anschutz chose not to share any transportation savings. See Sutter v. General Petroleum Corp., 28 Cal.2d 525 (1946); Kuffel v. Seaside Oil Co., 11 Cal.App.3d 354 (1970) (speculative damages not recoverable in fraud action)
 
 
 [4]
 As stated earlier, we must disregard West's trial testimony, which was not before the court at the time it heard defendants' motion for summary judgment
 
 
 [5]
 Mission also argues that "[t]he plaintiff need only show that 'performance is made more costly or burdensome'." Perhaps Anschutz could argue that its performance was made more costly or burdensome, but Mission cannot. Also, as with Mission's fraud claim, Mission's theory of damages is entirely speculative. Pipeline access did not guarantee increased revenue for Mission, as evidenced by Anschutz's post-access conduct of not sharing any savings with Mission. See footnote 4, supra
 
 
 [6]
 Here, too, Mission depends on the same speculative theory of damages. See footnotes 3 & 4, supra