Dr. Edward HUTTON, Plaintiff,

v.

PRIDDY'S AUCTION GALLERIES, INC., and Joe Priddy, Defendants.

No. 03 Civ.751 SAS.

United States District Court, S.D. New York.

June 27, 2003.

Kenneth F. McCallion, Michael A. Freeman, New York, NY, for Plaintiff.

Walter A. Saurack, Saterlee Stephens Burke & Burke LLP, New York, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Dr. Edward Hutton brings this action against Priddy's Auction Galleries ("PAG") and Joseph Priddy[1] for breach of contract and tortious interference with prospective business advantage. Defendants now move to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendants further move to dismiss the interference with prospective business advantage claim and both causes of action against Priddy for failure to state a claim pursuant to Rule 12(b)(6). In the alternative, defendants request that this action be transferred to the United States District Court for the District of Colorado pursuant to section 1404(a) of Title 28 of the United States Code. For the reasons set below, defendants' motion to dismiss is granted in part and denied in part. Fur-

---

**1.** Incorrectly named "Joe Priddy" in the Complaint.

thermore, defendants' request that this action be transferred to the District of Colorado is granted in part.[2]

## I. BACKGROUND

### A. The Parties

Priddy, a Colorado resident, is an officer and shareholder of PAG, a Colorado corporation located in Denver, Colorado with its principal place of business in Colorado. *See* 2/24/03 Affidavit of Joseph Priddy in Support of Dismissal ("Priddy Aff.") ¶¶ 2, 3. PAG is an auction house which has been in business for nine years, holding both direct sales and auctions of 18th–19th Century antiques and other collectibles. *See id.* ¶ 5. Hutton, a New York resident, is a collector and dealer in artworks, antiques and other collector's items. Complaint ("Compl.") ¶ 1. Hutton's business is located in New York, New York. *Id.*

### B. The Complaint

In October of 2002, PAG placed an advertisement in the Newtown Bee, a national subscription-based publication, regarding an auction of the estate of Robert F. Re (the "Re Estate"), to be held at PAG's premises in Denver, Colorado on November 2, 2002. Compl. ¶ 3. During the week prior to the auction, Hutton called PAG on at least three occasions to inquire about the Re Estate auction. *Id.* ¶¶ 1, 4. During these calls, Priddy indicated that he would accept third party checks written to Hutton and endorsed over to PAG as payment for any merchandise that Hutton purchased at the auction. *Id.* ¶ 4. Hutton faxed Priddy copies of the checks he intended to use for payment, and Priddy confirmed that they would be acceptable. *Id.* Furthermore, Priddy informed Hutton that PAG would accept payment by American Express card. *Id.*

Prior to traveling to Denver, Hutton obtained commitments from prospective New York buyers to purchase items he sought to obtain at the Re Estate auction. *Id.* ¶ 5. On November 1, 2002, Hutton and his assistant, Dr. Lydia Bronte, flew to Denver for the purpose of procuring merchandise from PAG and transporting it to New York. *Id.*

During the auction, Hutton purchased 19 items, some of which he intended to resell in New York, for a total of $24,965. *Id.* ¶ 7. When Bronte attempted to pick up the merchandise on the following morning, however, PAG refused to consummate the sales. *Id.* ¶ 10. Priddy informed Bronte that he had changed his mind and would not accept the checks which he had previously indicated would be acceptable (to Hutton via telephone). *Id.*

In an attempt to salvage the transaction, a series of telephone calls were made to the estate's attorney, Mark Schtul, and to the estate's executor to arrange another means of payment. *Id.* Schtul eventually agreed to accept the third party checks endorsed directly to the estate, on the condition that Hutton's American Express card would cover any potential problem regarding the checks. *Id.* Despite the arrangements made with Schtul, Priddy still refused to release the merchandise to Bronte, who then retrieved the checks and returned to New York without the merchandise. *Id.* ¶ 11.

On December 17, 2002, Hutton brought two causes of action against defendants as a result of their failure to complete the Re Estate auction transaction: (1) breach of contract and (2) interference with prospective business advantage. *Id.* ¶¶ 13, 16. Hutton claims that he has suffered a loss—of no less than $200,000—resulting from his lost opportunity to resell the mer-

---

**2.** Defendants removed this action to this Court based on diversity of citizenship.

chandise at a higher price and the lost time and expense of traveling to and from Denver to attend the Re Estate auction. *Id.* ¶¶ 15, 18.

### C. Defendants' Motion to Dismiss

Defendants have filed a motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), arguing that neither PAG nor Priddy are subject to personal jurisdiction in New York. Furthermore, defendants seek dismissal of the tortious interference with prospective business advantage claim, for failure to state a claim, under Rule 12(b)(6), arguing that the Complaint fails to allege that Priddy's actions were intentional. Defendants also seek dismissal of both claims against Priddy for failure to state a claim, on the grounds that Priddy cannot be held personally liable for acts of the PAG corporation. In the alternative, defendants request that this action be transferred to the United States District Court for the District of Colorado on the basis that New York is an inconvenient forum for this litigation.

In response, Hutton argues that this Court has personal jurisdiction over defendants pursuant to section 302(a)(3)(ii) of the New York Civil Practice Laws and Rules ("CPLR").[3] *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and/or Transfer ("Pl.Opp.") at 6. Because section 302(a)(3) requires the commission of a tort, it can confer personal jurisdiction over defendants only if Hutton has sufficiently pled his tort claim. Accordingly, I will first address the claim for tortious interference with prospective business advantage.

## II. MOTION TO DISMISS STANDARD

■ "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, a plaintiff need only plead "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff need not, in other words, plead the elements of a claim. *See In re Initial Public Offering Sec. Litig.*, 241 F.Supp.2d 281, 323 (S.D.N.Y.2003) ("Rule 8(a) does not require plaintiffs to plead the legal theory, facts or elements underlying their claim.").

At the motion to dismiss stage, the issue "'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Phelps v. Kapnolas*, 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)).

■ The task of the court in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Pierce v. Marano*, No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug.13, 2002) (quoting *Saunders v. Coughlin*, No. 92 Civ. 4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts

---

**3.** Section 302(a)(3) provides jurisdiction over any non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state...." N.Y. C.P.L.R. § 302(a)(3) (McKinney 2002).

must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

### III. TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

#### A. The Applicable Law

■ Hutton's tortious interference claim is governed by New York law because Hutton maintains that the alleged tort caused injury within New York. *See Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15 (2d Cir.1989) (per curiam) ("[W]hen the domiciles of the parties differ, the location of the injury determines the governing law absent special circumstances."). Although the alleged tortious activity took place in Colorado, Hutton claims he was injured in New York, where he lost his prospective customers. *See* Compl. ¶ 17. As such, New York is the locus of the tort and New York law governs this cause of action. *See H.S.W. Enter., Inc. v. Woo Lae, Oak, Inc.*, 171 F.Supp.2d 135, 142 (S.D.N.Y.2001) (finding that the locus of a tort is the place where the injury was felt, not where the tortious activity took place).

■ Under New York law, the elements of a claim for tortious interference with prospective business advantage are: (1) a business relationship between the plaintiff and a third party; (2) defendant's knowledge of that relationship and intentional interference with it; (3) defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the relationship. *See Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir.1997).

#### B. Hutton Fails to State a Tortious Interference Claim

■ In his second cause of action, Hutton claims that defendants' failure to accept third party checks, as payment for the items he had purchased at the Re Estate auction, constitutes tortious interference with prospective business advantage. Hutton alleges that defendants' refusal to consummate the auction sales resulted in his loss of opportunity to resell the merchandise to specific New York customers at a higher price.

Hutton does not, however, allege that defendants had any knowledge of his prospective third party contracts. Rather, Hutton makes only passing reference to his *own* knowledge of his contractual prospects in New York: "It was of considerable importance to Dr. Hutton that the merchandise he intended to purchase at the auction be immediately released for shipment back to New York since Dr. Hutton had an immediate opportunity to resell the merchandise and did not want to lose the opportunity." Compl. ¶ 5. Hutton's entire claim for tortious interference with prospective business advantage rests on defendants' unwillingness to complete the sale, without any mention of whether defendants had any knowledge of Hutton's prospective customers. "As a result of defendants' refusal to complete the sale of the merchandise purchased by Dr. Hutton at the auction, Dr. Hutton was unable to resell the merchandise at a higher price to a buyer he had already contacted." Compl. ¶ 17. Nowhere in the Complaint does Hutton allege that he had informed defendants of his prospective buyers, nor that defendants had acquired this knowledge in some other fashion.

■ While it is easy to plead a claim, it is difficult to dismiss one. Just recently, the United States Supreme Court reaffirmed that " '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz*, 534 U.S. at 514,

122 S.Ct. 992 (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229). However, even under the simplified pleading standard embodied in the Federal Rules, "a plaintiff is required to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. Here, Hutton has failed to meet this basic requirement, as the Complaint does nothing more than put defendants on notice of their failure to complete a simple transaction between PAG and Hutton. As such, the Complaint clearly puts defendants on notice of a breach of contract claim. However, because Hutton fails to even suggest that defendants knowingly interfered with his prospective business opportunities—thereby engaging in *tortious* conduct—the Complaint fails to notify defendants of how they committed a tort, other than by simply breaching an agreement.

Hutton may argue that defendants are on notice of their alleged intentional interference by the mere fact that the Complaint uses the words "interference with prospective business advantage." However, this naked declaration cannot satisfy the requirement that a claim provide the "grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. Were the mere title of a tort a sufficient pleading, Rule 12(b)(6) would be completely eviscerated. Accepting such a pleading goes beyond even the exceedingly low threshold of notice pleading set forth in the Rules and embraced in recent Supreme Court jurisprudence.

Earlier this year, I held that a party need not plead the elements of its claim to withstand dismissal. *See In re Initial Public Offering Sec. Litig.,* 241 F.Supp.2d at 323. That remains a correct statement of the law. In reaching that conclusion, I

relied, to some extent, on the sample form complaints in the Appendix of the Federal Rules. *See id.* (citing Fed.R.Civ.P.App. Forms 3–18). These forms "indicate the simplicity and brevity of statement which the rules contemplate" will constitute a satisfactory pleading. *See id.* (quoting Fed.R.Civ.P. 84). While the sample forms list neither the elements of their respective torts nor the facts needed to satisfy those elements, interestingly they all include allegations of *tortious* behavior.[4] For example, Form 9 sets forth a complaint for negligence in which plaintiff states in relevant part: "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant *negligently* drove a motor vehicle against plaintiff who was then crossing said highway." While the form does not include any facts to *support* plaintiff's accusation of negligence, it clearly pleads tortious behavior, as the form complaint alleges that the defendant acted "negligently." Accordingly, Form 9 adequately describes the negligence claim in a short and plain fashion thereby satisfying Rule 8. *See* Fed.R.Civ.P. 84.

Further examples of the requirement that a party plead some allegation of tortious activity include: Form 10 (alleging that the hypothetical defendant *"willfully* or *recklessly* or *negligently* drove or caused to be driven a motor vehicle against plaintiff who was then crossing said highway"); Form 13 (alleging that the defendant acted "for the *purpose of defrauding* plaintiff"); and Form 14 (alleging that the defendant acted *"negligently,"* and that plaintiff's injuries were caused "[b]y reason of defendant's *negligence* )." Fed. R.Civ.P.App. Form 10, 13, 14. These forms, although brief and succinct, allege some form of tortious activity. Such basic

---

**4.** Black's Dictionary defines "tortious" as "constituting a tort; wrongful." Black's Law Dictionary 775 (5th ed.1983).

allegations are essential to satisfy the minimal standard required by notice pleading. Here, Hutton has failed to allege *any* tortious behavior.

A "tort" is "[a] private or civil wrong or injury, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." Black's Law Dictionary 774 (5th ed.1983). Accordingly, Hutton's Complaint clearly fails to plead a tort. While the Complaint may be read to plead an interference with prospective business relations *resulting* from a breach of contract, such a claim does not amount to tortious behavior.[5] What makes interference *tortious* is that the defendant acted with the intent to interfere. Hutton makes no such allegation here, but rather rests his tort claim on precisely the same grounds upon which he pleads his breach of contract claim.[6] Put simply, the facts alleged—which serve as legitimate grounds for Hutton's breach of contract claim—do not adequately address the behavior which lies at the heart of a *tortious* interference with prospective business advantage claim (namely, a defendant's knowledgeable and intentional inter-

ference with a third-party relationship). Because the Complaint fails to plead tortious conduct, it fails to provide defendants with notice of the grounds upon which the cause of action rests. Failure to provide such basic notice is fatal to the cause of action; as such, it is dismissed for failure to state a claim.

## IV. PERSONAL JURISDICTION [7]

Due to Hutton's failure to sufficiently plead tortious interference with prospective business advantage, CPLR section 302(a)(3)(ii) is unavailable to confer jurisdiction over defendants for the remaining breach of contract claim. Nonetheless, despite Hutton's sole reliance on section 302(a)(3) as grounds for jurisdiction, *see* Pl. Opp. at 6, I will briefly address whether defendants are subject to New York jurisdiction under the remaining provisions of the New York long arm statute.[8]

### A. Legal Standard For 12(b)(2) Dismissal

■ A court is obligated to dismiss an action against a defendant over whom it has no personal jurisdiction. *See* Fed.

---

5. *See* Restatement (Second) of Torts: Intentional Interference with Prospective Contractual Relation § 766B (2003) (describing that interference must be *wrongful* to constitute a tort: "[w]hen the means adopted is not innately wrongful and it is only the resulting interference that is in question as a basis of liability, the interference is more likely to be found to be not improper").

6. As grounds for Hutton's first cause of action—breach of contract—Hutton alleges: "Defendants refusal to accept payment, either by check or through American Express, from Dr. Hutton for the merchandise he purchased at the November 2–3, 2002 auction of the Robert F. Re Estate constituted a breach of contract. As a result of said breach, plaintiff Dr. Hutton suffered damages, including the lost opportunity to resell the merchandise at a substantially higher price...." Compl. ¶¶ 14, 15. For Hutton's second cause of action—

tortious interference with prospective business advantage—Hutton asserts: "As a result of *defendants' refusal to complete the sale* of the merchandise purchased by Dr. Hutton at the auction, Dr. Hutton was unable to resell the merchandise at a higher price to a buyer or buyer (sic) he had already contacted." *Id.* ¶ 17. (emphasis added).

7. The parties have undertaken limited discovery to determine defendants' amenability to personal jurisdiction in New York.

8. When a federal court sits in diversity, it must apply the long-arm statute of the forum state to determine whether it has personal jurisdiction over the defendants. *See, e.g., CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 363 (2d Cir.1986) ("Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits.").

R.Civ.P. 12(b)(2); *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 597 (S.D.N.Y., 1998). The plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994).

Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998); *Ball v. Metallurgie Hoboken–Overpelt*, 902 F.2d 194, 197 (2d Cir.1990). In contrast, when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence. *See Robinson*, 21 F.3d at 507. Where the parties have conducted discovery regarding the defendant's contacts with the forum state, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996) (quoting *Ball*, 902 F.2d at 197). Thus, the court may consider materials outside of the pleadings. *See Hsin Ten Enter. USA, Inc.*, 138 F.Supp.2d 449, 452 (S.D.N.Y. 2000). In so doing, the court must view all allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

**B. Jurisdictional Facts**

All of PAG's auctions and sales take place within Colorado. *See* Priddy Aff. ¶ 5. Defendants own no real property in New York and have no employees, bank accounts, post office boxes or telephone lines in New York. *See id.* ¶ 6. Furthermore, defendants have no New York mailing address and PAG is not licensed to do business in New York. *See id.*

However, PAG does transact business with out-of-state buyers. *See id.* ¶ 7. Throughout the period 1999–2002 (the three years prior to the date of the events giving rise to this action), PAG sold approximately $40,000 worth of goods to New Yorkers.[9] *See id.* ¶ 8. PAG also transacts business with other out-of-state buyers, selling approximately $135,000 worth of goods to residents of states other than Colorado or New York. PAG's combined sales to out-of-state buyers from 1999–2002 amounts to approximately $175,000, or 8.75 percent of PAG's $2 million in total sales for those years. *See* 4/25/03 Affirmation of Michael A. Freeman [plaintiff's attorney] In Opposition to Motion to Dismiss and/or Transfer ("Freeman Aff.") ¶ 22.

Defendants also solicit business from out-of-state residents. Over the past three years, PAG has advertised in regional and national trade publications (collectively fewer than twenty times). *See* Priddy Aff. ¶ 10. PAG has never advertised in a publication specifically directed at the New York market, although some publications containing PAG's advertisements have made their way to New York through reader subscriptions. *See id.* ¶¶ 9, 10. Furthermore, defendants maintain an Internet website that is regularly updated

---

**9.** Revenues from sales to New York buyers have been calculated as follows: 2002—$11,530.10 or less than 2% of PAG total yearly revenues; 2001—one sale for $6,737.50 or approximately 1% of total yearly revenues; 2000—$39,565.05 or 3% of total yearly revenue.

with news of upcoming auctions. *See* Freeman Aff. ¶ 28.

### C. Defendants Are Not Amenable to Personal Jurisdiction in New York Pursuant to Section 301 of the CPLR

New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. *See* N.Y. C.P.L.R. § 301 [10] (codifying caselaw that utilizes "doing business" standard); *Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 191 (S.D.N.Y.2000) (interpreting section 301). Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Id.* at 191–92 (quoting *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)). In order to constitute "presence" within New York, the non-domiciliary must be "doing business" here " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692 (1982) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)). "The doing business standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F.Supp.2d 722, 731 (S.D.N.Y.2001) (internal quotation marks omitted).

To determine whether a foreign corporation is doing business in New York, courts have looked at a traditional set of factors: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it employs individuals, permanently located in the state, to promote its interests. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir.2000) (citations omitted). Further indicia of a foreign defendant's presence within the state include whether the defendant pays New York income or property taxes and whether the defendant is licensed to do business in New York. *See Continental Field Service Corp. v. ITEC International, Inc.*, 894 F.Supp. 151, 153 n. 4 (S.D.N.Y.1995); *Corio v. Stebo, Inc.*, 84 A.D.2d 738, 444 N.Y.S.2d 74 (1st Dept. 1981).

Defendants have not engaged in a continuous and systematic course of business in New York. Defendants own no real property within New York and have no offices, bank accounts, telephone lines, employees, mailing address, or post office boxes in the state. *See* Priddy Aff. ¶ 6. There are no individuals in New York that promote the interests of PAG. *See id.* Furthermore, defendants have no license to do business in New York, and neither PAG nor Priddy pay New York taxes. *See id.*

While PAG has sold goods to New York buyers, such sales amount to under $40,000, or less than 3% of PAG's total revenue for the last three years. *See id.* ¶ 8. Such a small amount of revenue derived from New York customers is insufficient to support a finding that the foreign company is doing business in New York. *See Bank of Taiwan v. Ulti–Med Intern., Inc.*, No. 95 Civ. 5657, 1996 WL 502411, at *2 (S.D.N.Y. Sept.4, 1996) (non-domiciliary

---

10. Section 301 provides that New York courts are empowered to "exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301 (McKinney 2002).

sales in New York, totaling $260,000 or 2.8% of its gross sales, was found to be "insufficient to meet the 'doing business' standard of N.Y. CPLR § 301"); *C.E. Jamieson & Co., Ltd. v. Willow Labs, Inc.,* 585 F.Supp. 1410, 1411 (S.D.N.Y.1984) (New York could not exercise personal jurisdiction, under section 301, over a Pennsylvania corporation which makes 5% of its yearly revenue in New York and has bank accounts and employees within the state).

PAG's solicitation of business from New York residents is also insufficient to constitute "doing business" within New York. *See Libove v. Newfound Sound Recording Studios, Inc.,* No. 90 Civ. 7845, 1992 WL 178609, at *2 (S.D.N.Y. Jul.16, 1992) (jurisdiction could not be predicated on section 301 despite the fact that the foreign defendant regularly advertised in New York since "it is well settled that solicitation is not enough to constitute doing business" in New York). Here, the mere fact that PAG has placed several advertisements in a weekly trade publication directed to a national audience does not subject defendants to New York jurisdiction merely because Hutton saw such an advertisement in New York. *See Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1047 (S.D.N.Y.1987) (finding that defendants' nationally directed advertisements in the Wall Street Journal and New York Times did not create jurisdiction in New York under CPLR section 301). The Newton Bee, the paper in which Hutton claims to have discovered defendants' advertisement, is a Connecticut publication which makes its way to New York primarily through reader subscription. *See* Priddy Aff. ¶ 9. As such, defendants' advertise-

ment in the trade publication does little to suggest that defendants do business in New York.

 Furthermore, defendants' maintenance of a website, which advertises defendants' auctions, also fails to constitute "doing business" within New York. "[T]he fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301." *Spencer Trask Ventures v. Archos S.A.,* No. 01 Civ. 1169, 2002 WL 417192, at *6–7 (S.D.N.Y. Mar.18, 2002). To allow jurisdiction on these grounds would subject defendants to jurisdiction in virtually every state. *See Hearst Corp. v. Goldberger,* No. 96 Civ. 3620, 1997 WL 97097, at *1 (S.D.N.Y. Feb.26, 1997). Defendants' website, therefore, does not bring defendants within the reach of section 301.

In light of PAG's *de minimis* contacts with New York, defendants cannot be found to be "present" within the state so as to justify the exercise of general jurisdiction over them.

### D. Defendants Are Not Amenable to Personal Jurisdiction in New York Pursuant to Section 302(a)(1) of the CPLR.

 Section 302(a)(1) provides for jurisdiction over any non-domiciliary who transacts any business within the state or contracts anywhere to supply goods or services in the state, so long as the cause of action arises from that contract.[11] *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir.1999). This section extends a court's jurisdiction "to any nonresident who has purposely availed [itself] of the privilege of

---

11. Section 302(a) provides, in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a) (McKinney 2002).

conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* (quotation marks omitted). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state." *Id.* A single business transaction can satisfy this provision, even where the defendant never enters the state, so long as the claim arises from that transaction. *See Haddad Bros., Inc. v. Little Things Mean A Lot, Inc.,* No. 00 Civ. 0578, 2000 WL 1099866, at *6 (S.D.N.Y. Aug. 4, 2000); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 564 (S.D.N.Y.2000). New York courts have cautioned, however, that "defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact." *McKee Electric Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604 (1967) (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

In determining whether an out-of-state defendant "transacts business" in New York, the Second Circuit has adopted an approach that considers a variety of factors, including: (1) whether the defendant has an on-going contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (3) what the choice-of-law clause is in any such contract; and (4) whether the con-

tract requires notices and payments to be sent into the forum state or requires supervision by the corporation in the forum state. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996). Although these factors provide some guidance, courts examine the totality of the defendant's contacts within the forum state in determining whether personal jurisdiction over a defendant exists. *See id.*

It is apparent that defendants do not transact business in New York. Hutton does not allege any prior business dealings with defendants. Rather, he asserts that he learned of defendants' auction through an advertisement in a national publication and subsequently contacted defendants in Colorado. *See* Compl. ¶ 3. As such, Hutton has not alleged an on-going relationship with defendants. Instead, it appears that the alleged contract between Hutton and defendants was a one shot business transaction.

Furthermore, the alleged contract was negotiated and executed in Colorado, where Hutton purchased specific goods at the Re Estate auction and attempted to collect those items by paying with third-party checks. *See id.* ¶ 7. While Priddy allegedly stated that he would accept third party checks during telephone calls which Hutton initiated from New York, New York courts have held that "conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state." *Worldwide Futgol Assocs., Inc. v. Event Enter., Inc.,* 983 F.Supp. 173 (E.D.N.Y.1997). *See also* Vincent C. Alexander, 1996 Supplemental Practice Commentary to § 302, at C302:10 ("[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong

of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone and fax without any New York presence by the defendant."). Moreover, these telephone negotiations, regarding means of potential payment, were clearly preliminary; Hutton executed the bulk of his negotiations in Colorado, where he selected the items he intended to purchase, determined the amount of money he was willing to spend on those items and, presumably, secured the lowest possible price to obtain the merchandise. *See* Compl. ¶ 7.

During the three years prior to the events leading up to this litigation, Priddy had not visited New York, let alone conducted any business on PAG's behalf. *See* Priddy Aff. ¶ 4. In addition, the alleged contract in question was to be performed in Colorado, with Hutton paying defendants with third party checks and defendants providing merchandise to Hutton in Colorado. *See* Compl. ¶¶ 4,5. Hutton makes no allegation that there were to be notices or payments sent into New York. Rather, it appears from Hutton's allegations that the auction transaction would have been complete upon acceptance of his third party checks. *See* Compl. ¶ 4.

In light of the factors articulated by the Second Circuit, it is beyond cavil that defendants have not transacted business within New York as required by section 302(a)(1).

### E. Defendants Are Not Amenable to Personal Jurisdiction in New York

As sections 302(a)(2) and 302(a)(3) require the commission of a tort, analysis under these provisions is not warranted. Section 302(a)(4) is equally inapplicable here, as it requires ownership, use or possession of real property situated in New York; defendants clearly do not meet these requirements. As such, defendants are subject to neither general nor specific jurisdiction in New York. Because defendants are not amenable to New York jurisdiction under the long arm statute, it is unnecessary to enter into a minimal contacts analysis.

## VI. TRANSFER TO COLORADO

Because it is possible that Hutton would seek leave to amend his Complaint to adequately plead his tortious interference claim, which might in turn support the exercise of personal jurisdiction, I now turn to defendants' motion to transfer any remaining claims to Colorado.

### A. Legal Standard for Transfer

 Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §§ 1404(a). Under section 1404(a), a federal district court has the power to transfer an action—even if the court has no personal jurisdiction over the defendants—if the transfer would be in the interests of justice. *See Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978); *see also SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172 (2d Cir.2000) (finding that lack of personal jurisdiction can be cured by transfer to a district in which personal jurisdiction can be exercised under section 1404(a)). "Normally transfer will be in the interest of justice because [ ] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.' " *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir.1990) (quoting *Goldlawr, Inc. v. Hei-*

*man,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)).

■ Relevant factors in determining whether transfer is warranted include: (1) convenience of witnesses; (2) convenience of parties; (3) the locus of operative facts; (4) the ability to compel attendance of unwilling witnesses; (5) the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on totality of circumstances. *See Ayala–Branch v. Tad Telecom, Inc.,* 197 F.Supp.2d 13, 15 (S.D.N.Y.2002); *Caesar v. Interoute Telecommunications, Inc.,* No. 00 Civ. 8629, 2001 WL 648946, at *4 (S.D.N.Y. June 12, 2001); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d 433, 436 (S.D.N.Y.2000).

### B. Transfer to Colorado Is Warranted

■ The interests of justice clearly require transfer of Hutton's breach of contract claim to Colorado. The defendants are amenable to personal jurisdiction in Colorado as both PAG and Priddy are domiciled within the state. *See* Priddy Aff. ¶¶ 2, 3. Furthermore, the locus of the operative facts which gave rise to Hutton's claim occurred in Colorado, as the claim arose from a contract which was negotiated and partially performed within Colorado. Nearly all of the witnesses relevant to the breach of contract claim reside in the District of Colorado, where the alleged breach occurred. *See id.* ¶ 13. Accordingly, the ease and access to proof favors litigation in Colorado, where witnesses are available to give pertinent testimony.

Transfer to Colorado is also appropriate in light of the parties' convenience. Defendants would obviously prefer to litigate in Colorado and Hutton has already demonstrated his willingness to travel to Colorado for business purposes (when he attended the Re Estate auction). While a plaintiff's choice of forum is normally afforded deference, this Court lacks jurisdiction over defendants. Therefore, at this time, Hutton is precluded from bringing his breach of contract action in New York and his choice of forum is immaterial.

In light of the totality of the circumstances, the interests of justice require transfer of Hutton's case to Colorado.

### VII. CONCLUSION

Because this court has no jurisdiction over defendants, I decline to decide whether Priddy may be held personally liable for the acts of PAG. For the reasons stated above, defendants motion to dismiss Hutton's claim for tortious interference with prospective business advantage is granted without prejudice. In addition, the remaining claim is hereby transferred to the United States District Court for the District of Colorado. That court may then determine whether to grant Hutton leave to amend his claim for tortious interference with prospective business advantage. The Clerk of the Court is directed to close this case.