*808 OPINION OF THE COURT
Rolando T. Acosta, J.
Background
The facts in this case are fairly straightforward. In July 1999, plaintiff Chestnut Ridge Air, Ltd. purchased the aircraft at issue in this case. Corporate Air Management (CAM), a Michigan-based corporation, maintained and managed the aircraft for Chestnut. In August 1999, CAM engaged defendant Sky Harbour, a Canadian corporation, to strip, paint and refinish the aircraft. The work order, which was prepared by Sky Harbour, incorrectly listed CAM as the owner of the aircraft. According to plaintiff and CAM, Sky Harbour knew or should have known that CAM was not the owner because CAM sent Sky Harbour a copy of the registration, as noted on the work order, which identified Chestnut as the owner. In addition, Sky Harbour painted the tail registration number (N65DL) on the aircraft and it could have easily determined the owner through publicly available Federal Aviation Administration databases.
In March 2005, Jeffrey C. Collett, Chestnut’s principal pilot, noticed during a routine inspection that the paint on the right wing was bubbling. Further testing at two different locations revealed that there was extensive corrosion of the wings and it was eventually determined that the aircraft was unairworthy. The aircraft is currently not in use.
In its amended complaint, plaintiff raises two causes of action: breach of contract and negligence. Sky Harbour moved to dismiss the complaint on several grounds. First, it argues that this court lacks personal jurisdiction over it because it has no contacts with New York. It also argues that New York is an inconvenient forum. Last, it argues that plaintiff has failed to state a cause of action because the work order (contract) lists CAM as the owner and Chestnut is not mentioned anywhere in the contract, that the negligence action is nothing more than a recasting of the breach of contract action, and that, in any event, the statute of limitations ran on any negligence action.
Personal Jurisdiction
Pursuant to CPLR 301, this court may exercise jurisdiction over a party if it is “doing business” in New York State. A defendant is “doing business” in New York if it has engaged in such continuous and systematic course of activities in New York such that it can be deemed present in New York. (Frummer v Hilton Hotels Intl., 19 NY2d 533, 536 [1967].) The test for
*809 “ ‘doing business’ is a ‘simple [and] pragmatic one,’ which varies in its application depending on the particular facts of each case. The court must be able to say from the facts that the corporation is ‘present’ in the State ‘not occasionally or casually, but with a fair measure of permanence and continuity’ ” (Landoil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28, 33-34 [1990] [citations omitted]).
Although simple and pragmatic, “[t]he doing business standard is a stringent one because a corporation which is amenable to the Court’s general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York.” (Jacobs v Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F Supp 2d 722, 731 [SD NY 2001] [internal quotation marks omitted].)
In addition to the traditional indicia of “doing business” in New York, such as the existence of an office, bank account or other property in New York, jurisdiction over a foreign corporation exists where it solicits business in New York and engages in some other continuous activity. (Allojet PLC v Vantage Assoc., 2005 WL 612848, *6, 2005 US Dist LEXIS 4006, *29 [SD NY 2005] [once substantial solicitation is shown, “very little more is necessary to a conclusion of doing business” (internal quotation marks omitted)].) Solicitation in the jurisdictional context does not necessarily require solicitation in the sense of an offer of contract. (Wiwa v Royal Dutch Petroleum Co., 226 F3d 88 [2d Cir 2000].) Rather, the central question is whether the defendant behaved in such a way as to encourage others to spend money, or otherwise act, in a manner that would benefit defendant. (Id.)
Given the advances in communications technology, jurisdiction pursuant to CPLR 301 may be established through nontraditional methods. Thus, an interactive Web site may constitute solicitation activity to support a finding of jurisdiction under CPLR 301. (Thomas Publ. Co. v Industrial Quick Search, Inc., 237 F Supp 2d 489, 492 [SD NY 2002]; Citigroup Inc. v City Holding Co., 97 F Supp 2d 549, 566 [SD NY 2000].)
This is consistent with the New York Court of Appeals’ recognition that technological advances, such as e-mail and instant messaging, “enable a party to transact enormous volumes of business within a state without physically entering it.” (Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 *810 [2006].) Accordingly (and although in the context of CPLR 302— long-arm jurisdiction), the Court in Deutsche Bank held that “when the requirements of due process are met ... a sophisticated [business] knowingly entering our state — whether electronically or otherwise — to negotiate and conclude a substantial transaction is within the embrace of the New York long-arm statute.” (Id. at 71.)
Here, Sky Harbour substantially solicits New York business through its interactive Web site. Indeed, the Internet user may obtain a quote on aircraft maintenance services; the Web site states that Sky Harbour will e-mail or send computer drawings to the customer for proposed painting projects; it maintains a “Forum” on the Web site that enables prospective customers to post questions directly to Sky Harbour personnel and receive replies regarding painting, maintenance and custom designed interiors that Sky Harbour can install; the Forum also allows users to post items for sale or rent; and it provides customers a “private website” to monitor a project’s daily progress. In essence, Sky Harbour created a virtual community in New York that meets all its clients’ needs. The fact that it is not physically in New York is of no moment. As the court noted in Thomas Publ. Co. v Industrial Quick Search, Inc. (237 F Supp 2d at 492, supra), “[i]f [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [defendant] to personal jurisdiction [in New York].”
Moreover, since its incorporation in 1997, Sky Harbour has engaged in continuous activity in New York. It performed work on an average of seven projects from New York customers (which Sky Harbour defined narrowly as only those customers with a “New York billing address”) annually and at least 4% of its revenue comes from these customers. These projects take on average 14 days to complete. Assuming working through the weekends, Sky Harbour averages 14 weeks a year on New York business.
Sky Harbour’s claim that this court lacks personal jurisdiction because Sky Harbour’s revenue from New York clients is less than 5% annually (see, e.g., Schottenstein v Schottenstein, 2004 WL 2534155, 2004 US Dist LEXIS 22648 [SD NY 2004]; Hutton v Priddy’s Auction Galleries, Inc., 275 F Supp 2d 428 [SD NY 2003]) is unavailing since it uses a narrow definition of “New York customers.” Given the nature of the business, where as in the facts of this case, Sky Harbour was contacted by CAM, a Michigan business, on behalf of a New York resident, and Sky *811 Harbour incorrectly listed CAM as the plane’s owner, its New York revenue could be substantially higher. As far as this court is concerned, however, Sky Harbour’s New York revenue, which totaled $102,583 in 1999, $108,590 in 2000, $85,301 in 2001, $61,728 in 2002, $271,722 in 2003, $183,764 in 2004, $2,181 in 2005 and $84,935 thus far in 2006, in combination with the amount of time spent on New York clients, is more than sufficient to establish continuous activity.
Nor are there any due process concerns inasmuch as Sky Harbour has “minimum contacts” with New York so as to not offend “traditional notions of fair play and substantial justice.” (International Shoe Co. v Washington, 326 US 310, 316 [1945].) It maintains an interactive Web site through which it solicits business in New York State. Moreover, it has procured on average of seven work orders a year from customers with a New York billing address since 1999. Based on these factors, Sky Harbour has purposely directed its conduct toward New York and should have reasonably anticipated being hauled into court in New York. Accordingly, this court has jurisdiction over Sky Harbour pursuant to CPLR 301.
Inconvenient Forum
Sky Harbour has also failed to establish that New York is an inconvenient forum. The burden is on the defendant challenging the forum to demonstrate relevant private or public interest factors which militate against accepting the litigation. (Bank Hapoalim [Switzerland] Ltd. v Banca Intesa S.p.A., 26 AD3d 286 [1st Dept 2006].) Indeed, plaintiff’s New York residence should generally be “the most significant factor in the equation.” (Sweeney v Hertz Corp., 250 AD2d 385, 385 [1st Dept 1998].) Therefore, a New York plaintiff will not be deprived of its home forum unless “it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and convenience of the parties.” (Silver v Great Am. Ins. Co., 29 NY2d 356, 361 [1972].) Here, the fact that Sky Harbour will be inconvenienced is an insufficient basis to deprive plaintiff of its home forum. It should also be noted that Sky Harbour is only 1 out of 11 defendants and none of the others have joined in Sky Harbour’s request.
Failure to State a Cause of Action
In evaluating a motion to dismiss for failure to state a claim under CPLR 3211 (a) (7), the court must accept the allegations of the complaint as true, and accord plaintiff the benefit of every possible favorable inference and determine only whether *812 the facts as alleged fit within a cognizable legal theory. (CBS Corp. v Dumsday, 268 AD2d 350 [1st Dept 2000]; see also Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001] [motion must be denied if “from (the) four corners (of the pleading) factual allegations are discerned which taken together manifest any cause of action cognizable at law”]; Wiener v Lazard Freres & Co., 241 AD2d 114, 120 [1st Dept 1998] [“so liberal is th(is) standard . . . that the test is simply ‘ “whether the pleading has a cause of action,” ’ not even ‘ “whether he has stated one ” ’ ”].)
Here, accepting plaintiffs allegations as true that Chestnut is the true owner and that Sky Harbour knew or should have known, plaintiff has clearly made out a breach of contract claim. In any event, given the facts of this case, Chestnut is a clear third-party beneficiary under the contract inasmuch as the work order is a valid contract, the contract was intended for Chestnut’s benefit, and the benefit is immediate rather than incidental. (Bonwell v Stone, 128 AD2d 1013 [3d Dept 1987] [plaintiff home buyer’s breach of contract suit allowed to proceed because, even though defendant never dealt with plaintiff, defendant had been contracted by realtor, and circumstances surrounding the contract indicated that defendant knew the repairs were being made in anticipation of a real estate transaction].) Indeed, the circumstances surrounding the creation of the work order and the work order itself show that Sky Harbour knew or should have known that the aircraft belonged to someone other than CAM. Not only is CAM a maintenance company with no aircraft of its own, but the work order indicated that CAM sent Sky Harbour a copy of the registration, which indicates the true owner of the aircraft. Moreover, Sky Harbour changed the tail registration number, indicating that ownership changed recently.
Chestnut has also stated a cause of action for negligence. (See Trans Caribbean Airways v Lockheed Aircraft Serv.-Intl., 14 AD2d 749 [1st Dept 1961].) In Trans Caribbean, plaintiff and defendant had a contractual relationship whereby defendant would service and maintain plaintiffs airplanes. Plaintiff sued for breach of contract and negligence for defendant’s faulty repairs. The Appellate Division, First Department, held that “[n]egligent performance of the work gives rise to an action in tort and for breach of contract.” (Id. at 749.) Here, Sky Harbour was contracted to provide, inter alia, “metal treatment of steel screws on wings to prevent rusting.” Chestnut contends, *813 however, that Sky Harbour did not use all reasonable expert care and skill and failed to comply with accepted and established aviation practices and procedures in accordance with written manuals and instructions, and instead was negligent in the manner it repainted and provided maintenance services to the aircraft. (Amended complaint ¶ 47.) Chestnut also alleged that, as a result of Sky Harbour’s breach of duty to Chestnut, the aircraft was rendered unairworthy. (Id. at ¶ 48.) These allegations are sufficient to set forth a viable cause of action for negligence. (Trans Caribbean Airways v Lockheed Aircraft Serv.-Intl., 14 AD2d at 749.)
Last, inasmuch as plaintiff did not discover the damage to the aircraft until 2005, the three-year statute of limitations on the negligence claim has not run out. (CPLR 214-c [2] [action for damages for injury to property caused by the latent effects of the exposure to any substance or combination of substances, in any form, upon or within the property must be commenced within three years from the date plaintiff discovered the injury or should have reasonably discovered the injury]; Patterson v City of New York, 289 AD2d 213 [2d Dept 2001] [substance must be toxic].) Here, Sky Harbour used toxic chemicals to strip the paint from the aircraft. The chemicals also stripped the protective coating or electroplated material from the fasteners on the wings, which Sky Harbour allegedly failed to replace before repainting the aircraft. Because the aircraft’s wings were painted over, Chestnut did not discover the corrosion until March 2005 when the paint started to bubble. The action was timely commenced in September 2005.
Accordingly, based on the foregoing, it is ordered that Sky Harbour’s motion to dismiss the first amended complaint is denied in its entirety.
[Portions of opinion omitted for purposes of publication.]